NO.   93-033

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

STATE OF MONTANA,

Plaintiff and Respondent,

v.

DOUGLAS ROBERT BROOKS,

Defendant and Appellant.

APPEAL FROM:   District Court of the Twelfth Judicial District,
In and for the County of Hill,
The Honorable John Warner, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Lawrence **LaFountain,** Attorney at Law,
Havre, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General;
Elizabeth L. Griffing, Assistant Attorney
General; Helena, Montana; David G. Rice,
Hill County Attorney, Havre, Montana

Submitted on Briefs:   July 8, 1993

**Decided:**  August 24, 1993

FILED

AUG 2 4 1993

Filed:  *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Appellant Douglas Robert Brooks was convicted of sexual assault following a jury trial and appeals from the judgment of the District Court of the Twelfth Judicial District, Hill County, claiming error in the court's failure to suppress evidence of prior crimes.

We affirm.

The sole issue on appeal is whether the District Court erred in denying Brooks' motion to suppress evidence of prior crimes. We analyze this issue under the modified Just rule, as set forth in State v. Matt (1991), 249 Mont. 136, 814 P.2d 52.

On March 23, 1992, Brooks was charged by information with a sexual assault on an 11-year-old victim, W.J., allegedly occurring on February 7, 1992, in Havre, Montana.  On June 25, 1992, as required by Matt, the State filed a notice informing Brooks that evidence of a prior sexual assault committed by Brooks would be introduced at trial.  Brooks filed a motion to suppress this evidence.  The District Court denied the motion.  On August 25, 1992, a jury found Brooks guilty of sexual assault.  Brooks appeals from the judgment on the issue of admission of the prior sexual assault.

The prior crime introduced in Brooks' trial involved an incident that occurred before his move to Havre.  In May 1989, Brooks took 13-year-old G.M. to Lake Chelan in Washington state where they engaged in recreational activities, including swimming,

during the day.  Later that evening, Brooks sexually assaulted G.M. In January 1990, Brooks was convicted in Washington of felonious sexual contact with a minor.

After moving to Havre, Brooks became employed as a maintenance man at a motel where he became friendly with the manager's lo-year-old son, J.T.  In addition to helping J.T. with his math, Brooks also accompanied him to the Havre city pool which was largely attended by 10 and 11-year-old boys.  Brooks would frequently play with the boys in the pool by flipping them into the water.  In fact, complaints were made to the pool management that Brooks was paying too much attention to the young boys. An off-duty police officer investigated these complaints and found that Brooks had a tendency to pay more attention to the young boys than to the girls at the pool.

One day Brooks took both J.T. and his friend, W.J., swimming at the pool.  Brooks flipped the boys in the water, played several pool games and allowed them to ride on his back for about 30 minutes or an hour.  According to W.J., Brooks approached him from behind and squeezed his buttocks, at which time W.J. swam away in order to inform J.T.  Later on, according to W.J., Brooks approached him again, and this time squeezed W.J.'s penis. J.T. testified that Brooks later approached him also and squeezed his buttocks.

The next week, at J.T.'s birthday party, W.J. became upset when informed that Brooks might stop by.  According to W.J.,

Brooks had asked him whether or not he intended to inform the police about the swimming pool incident, and W.J. answered that he would not. Brooks contends that W.J. approached him with sexual advances and that he merely tried to counsel W.J.

Did the District Court err in denying Brooks' motion to suppress evidence of prior crimes?

As indicated, we will analyze this issue in light of the four-part modified Just rule that provides:

> (1) The other crimes, wrongs or acts must be similar.
>
> (2) The other crimes, wrongs or acts must not be remote in time.
>
> (3) The evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity with such character: but may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
>
> (4) Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading of the jury, considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Matt, 814 P.2d at 56.

Brooks' actions show a systematic plan to entertain boys or adolescents in a recreational setting in which they feel comfortable and then, immediately or soon after, to catch them off-guard and unexpectedly sexually assault them. Although the time Brooks spent befriending G.M., J.T., and W.J. before sexually

assaulting them varied with each victim, the plan was nonetheless systematic in that swimming or water games were used as a prelude to the assaults, and the boys were each in a vulnerable position because they wore fewer clothes while they were swimming, or in G.M.'s case, receiving a back rub, than they would have in a more formal setting.

Applying the first element of the modified Just rule to the case at bar, we conclude that the sexual assault committed by Brooks in Washington against G.M. is similar to the sexual assault committed against W.J. in Havre. As we stated in State v. Gilpin (1988), 232 Mont. 56, 64, 756 P.2d 445, 449, the prior act does not need to be identical to the charged offense. In the case at bar, the two acts are extremely similar.

Brooks took G.M. swimming at a lake in order to become closer to him. The sexual assault on G.M. occurred after the swim in the evening while Brooks gave G.M. a back rub which eventually turned into an excuse to rub G.M.'s buttocks and penis. In the incident involving J.T. and W.J., Brooks took both boys swimming at a pool in order to strengthen his friendship with J.T. and become better acquainted with W.J. During the water games, Brooks unexpectedly assaulted both J.T. and W.J.

The similarities are obvious. In both incidents, Brooks entertained the boys in a recreational setting around water and swimming as a prelude to his sexual assaults. Brooks claims that the acts are not similar because of the difference in location. We

5

disagree. Although the assault of G.M. occurred after a swim, as opposed to the assault on W.J. which occurred while still in the water, both of the assaults occurred in or near swimming areas and after Brooks had engaged in recreational activities with the boys in order to appear to be their friend, and when the boys were more vulnerably dressed, either in swim clothing or bedtime clothing. Even though Brooks had just met W.J. and had only entertained him in the pool for a short time before assaulting him, W.J. assumed that Brooks could be trusted since Brooks had already gained the trust of W.J.'s close friend, J.T., by taking J.T. on recreational outings. Therefore, Brooks, through the trust he had already gained with J.T., was able to put W.J. at ease with less effort and, subsequently, take him by surprise with his sexual assault.

Brooks claims that he learned in therapy that he was only attracted to 13 and 14-year olds, rather than 10 and 11 year olds. The problem with this argument is that it focuses on age, as opposed to physical development. There is often no clear difference in physical development among children in this age range. Brooks failed to present specific evidence of any developmental differences between G.M. and W.J. that caused him to only be attracted to G.M. and not to W.J. G.M. had turned 13 just one month prior to the sexual assault in Washington state, while W.J. turned 11 soon after the sexual assault in Havre. The age difference between G.M. and W.J., without more explanation, is not sufficient to warrant a suppression of such a similar crime.

6

The District Court did not err in finding sufficient similarity in the two crimes to meet the first element of the modified Just rule.

Regarding the second element of the modified Just rule, nearness in time between the two crimes, we conclude that the three year time period between the prior crime and the assault against W.J. is not so great as to render the evidence of the prior crime inadmissible.

In State v. Medina (1990), 245 Mont. 25, 30, 798 P.2d 1032, 1036, we held that the range of three to five years between the prior conviction and the charged crime was "near enough in time to be considered probative." Although the facts differ in the case at bar, when considering nearness of time, "each case must be examined in light of its unique set of facts." Medina, 798 P.2d at 1036. In Medina, a case in which the victim of the prior and charged crime was the defendant's daughter, in considering the remoteness of the prior crime, we took into account the fact that the defendant did not have the "opportunity" to be alone with the daughter for several years between the prior crime and the charged crime due to the strict rules imposed by the family. Medina, 798 P.2d at 1036. Similarly, in the case at bar, the defendant did not have the opportunity to be in contact with young or adolescent boys for over a year because he was incarcerated or under the supervision of the Washington State Department of Corrections. Defendants' abstention from sexual abuse because of a lack of

7

opportunity will not prevent this Court from taking into account a prior crime because of remoteness in time from the present crime.

The District Court did not err in finding that the prior crime was not too remote to be admitted under the second element of the modified Just rule.

The third element of the modified Just rule is that the evidence of crimes is admissible, among other reasons, to show a tendency to establish a common scheme, plan, or system, as opposed to being admissible to prove the character of a person in order to show action in conformity therewith. Brooks' tendency, as a prelude to sexual assault, to entertain young boys in a recreational setting in order to make them feel comfortable, and then catch them off-guard by sexually assaulting them, constitutes a common scheme or plan as noted above.

The District Court did not err in finding that Brooks developed a common scheme to an extent appropriate to admit the prior crime under the third element of the modified Just rule.

Finally, analysis of the fourth element of the modified Just rule, leads us to conclude that the probative value of the prior crime is not outweighed by the prejudice to the defendant. Although it is inevitable that the introduction of a prior crime will have some prejudicial effect on a defendant, we held in State v. Eiler (1988), 234 Mont. 38, 51, 762 P.2d 210, 218, that when the prior crime meets the first three elements of the Just rule, these elements combine to give "great probative weight to the evidence of

prior **acts."** Accordingly, we conclude that because the prior crime met the first three elements of the Just rule and the modified Just rule, the cumulative effect is that the probative value outweighs the prejudice to Brooks.

We hold that the District Court did not err in denying Brooks' motion to suppress evidence of prior crimes. We affirm.

_____
                      Justice

We concur:

_____
         Chief Justice

_____

_____

_____
         Justices

9

August 24, 1993

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


LAWRENCE A. LaFOUNTAIN
Attorney at Law
P.O. Box 1532
Havre, MT 59501

HON. JOSEPH P. MAZUREK, Attorney General
Elizabeth L. Griffmg, Assistant
Justice Blgd.
Helena. MT 59620

DAVID G. RICE
Hill County Attorney
P.O. Box 912
Havre, MT 59501-0912



ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy