No.   93-409

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994


STATE OF MONTANA,

      Plaintiff and Appellant,

    v.

JEFFREY LAYNE GARN,

      Defendant and Respondent.

FILED

MAR 24 1994

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA


APPEAL FROM:   District Court of the First Judicial District,
                 In and for the County of Lewis and Clark,
                 The Honorable Thomas C. Honzel, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

           Hon. Joseph P. Mazurek, Attorney General,
           Cregg W. Coughlin, Assistant Attorney
           General, Helena, Montana

           Mike McGrath, Lewis and Clark County
           Attorney, Helena, Montana

      For Respondent:

           Edmund F. Sheehy, Jr., Cannon & Sheehy,
           Helena, Montana


Submitted on Briefs:   November 18, 1993

Decided:   March 24, 1994

Filed:

_____
          Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Appellant State of Montana appeals from the order of the First Judicial District Court, Lewis and Clark County, granting a new trial to defendant Jeffrey Layne Garn for admitting irrelevant evidence at trial, based on State v. Keys (1993), 258 Mont. 311, 852 P.2d 621, which was decided between Garn's conviction and motion.

We affirm.

The sole issue raised on appeal is whether the District Court erred when it granted the defendant a new trial.

In August and early September 1992, 15-year-old K.M. was staying with her father in Helena while her mother moved from Reno, Nevada, to Spokane, Washington. K.M.'s mother was to arrive in Helena on September 2, 1992, and K.M. was to return to Spokane to reside with her. K.M. did not want to live with her mother because of conflict in their relationship. On September 2, 1992, K.M. decided to run away to avoid returning to Spokane with her mother. She gathered her clothes into a duffle bag and hid them in her father's home. Then she went to the mall to see T.R., a young man she had met the night before who worked at a record and video store. K.M. told T.R. that she was 15 years old and had run away from home and needed a place to stay. T.R. told her that he could not provide her with a place to stay. He introduced her to Garn, the manager of the record and video store. T.R. told Garn that she was a runaway and needed a place to stay and left them alone to talk. Sometime during their conversation, Garn showed K.M. a

2

brochure regarding a modeling contest. Garn asked her if she was interested in modeling for photographs that could be entered in the contest, and told her she could win $500. K.M. agreed to model for Garn at his house that evening. K.M. testified that Garn did not tell her that nudity would be involved in the modeling.

After the record and video store closed, K.M. met Garn at the outside entrance to the mall. Before they drove to Garn's house, he drove her to her father's house to get her duffle bag. After arriving at Garn's house, the two sat on the couch in the living room. K.M. testified that Garn told her to undress, and that she was hesitant and confused, and was unsure whether she should run and try to get away, or do what she was told. K.M. testified that she went to the bathroom and put on a slip that Garn had given her, but left her underwear on. She returned to the living room and sat on the couch by Garn. They talked about nudist colonies that Garn had visited. Then Garn asked her to take off her top. K.M. testified that although Garn did not threaten her, she was intimidated by him. She took off her top and Garn fondled her breast. K.M. testified that she shook her head no. Garn testified that he had asked her if he could touch her breast and that she said "enjoy it." He then asked her to remove the rest of her clothing and turn around in a circle for him. K.M. complied with his request. K.M. testified that after Garn took two polaroid pictures of her, he exposed himself to her, and then had sexual intercourse with her by penetrating her vagina with his fingers. K.M. told Garn that she was tired and asked to stay at his home or

3

go somewhere else. Garn agreed to pay for a motel room for her to stay in. On her way out, she picked up the photographs to take with her. Garn took them from her saying she would not need them because he was choosing someone else for the photo contest. He unsuccessfully tried to burn and cut the photographs. Garn then drove her to a motel and paid for a room for her to stay in. Since early that evening, her father had been searching for her and reported her absence to the police. She called her father who immediately drove to the motel and brought her home.

On December 8, 1992, Garn was charged with two felonies, sexual intercourse without consent, and deceptive practices. Prior to trial, the District Court dismissed the deceptive practices charge. On January 25, 1993, the State gave notice to Garn pursuant to the notice requirements of State v. Just (1979), 184 Mont. 262, 602 P.2d 957, modified in State v. Matt (1991), 249 Mont. 136, 814 P.2d 52, that it intended to introduce evidence of other crimes, wrongs, or acts involving Garn's convictions of unlawful transactions with minors. The State argued that the other crime or acts evidence were relevant to determine whether K.M. consented to the sexual contact by demonstrating Garn's plan or common scheme, whereby he would entice teenage girls to pose nude with promises of money and modeling opportunities, thus proving any consent given to him by K.M. was achieved by deception and invalid. Garn opposed the evidence, arguing that the evidence could not meet the similarity requirements of the modified Just analysis, and therefore, was inadmissible character evidence.

4

The other crimes or acts evidence involved testimony by two teenage girls, S.M. and A.W., who modeled for Garn for a photo contest to promote his record and video store. S.M., who was 16 years old, testified that she knew Garn because she worked in the mall and would see him at the record and video store. She testified that he would often tell her dirty jokes and tell her about nudist colonies he had visited. On October 19, 1992, at the record and video store, Garn promised to pay the girls $50 to model for him at his house the next day, and also promised to provide them with alcohol while they modeled. The three met at Garn's house the next afternoon. After talking a while, Garn gave the girls wine coolers and had them change into different attire that they had brought with them. As the girls danced to music, Garn videotaped and took polaroid pictures of them. Later, Garn urged the girls to remove more clothing and directed the girls actions, while continuing to take pictures of them. Eventually, the girls were naked except for their underwear.

S.M. had to leave for work at five o'clock so the girls began dressing. Garn asked A.W. to stay and continue modeling for him, but A.W. made excuses to leave. When the girls left they took a couple of the polaroid photographs with them. Later, they tried to destroy them and threw them in the garbage. S.M.'s mother learned of the incident, retrieved the photographs, and notified authorities. Garn was charged with unlawful transactions with minors for supplying the girls with alcohol, to which he pled guilty.

5

On March 17, 1993, the District Court allowed the other crimes or acts evidence at trial. After hearing the evidence and testimony, the jury found that Garn was not guilty of sexual intercourse without consent, but found him guilty of sexual assault.

After Garn's conviction, and before his motion for a new trial, this Court decided Keys, 852 P.2d 621. Garn requested a new trial arguing that Keys supported his contention that the other crimes or acts evidence allowed at trial were not relevant to prove any issue at trial. The District Court granted his motion for a new trial based on Keys stating that the evidence was not sufficiently similar to the present charges concerning sexual contact without consent because the evidence did not involve sexual assault or sexual advances toward the girls. Therefore, the court found the evidence was not relevant under Rule 404(b), M.R.Evid.

Did the District Court err when it granted defendant a new trial?

The State contends that the District Court abused its discretion when it granted Garn a new trial by finding the other crimes or acts evidence allowed at trial did not meet the modified Just requirements. The State argues that the evidence was necessary to prove the central issue in dispute, that K.M. did not consent to sexual intercourse with Garn, and that the requirements under the modified Just rule had been met. The State's purpose for admitting the other crimes or acts evidence was to show motive, intent, plan, and common scheme, which it contends was relevant for

6

the determination of whether K.M. consented to the sexual contact by demonstrating a plan or common scheme whereby Garn would entice teenage girls to pose nude with promises of money and modeling opportunities, thus rendering any consent invalid. The other crimes evidence involved Garn's conviction for supplying alcohol to the underage girls.

Garn opposed the evidence arguing that the evidence could not meet the similarity requirement under the modified Just rule because his prior crime of supplying the teenage girls with alcohol was not similar to the charges in the present case involving sexual intercourse without consent. Further, the other acts evidence did not involve any sexual contact or advances. Garn argues that the District Court's decision was correct when it determined that the evidence was not relevant to prove any issue in dispute. He argues that the evidence was inadmissible character evidence.

Section 46-16-702(1), MCA, provides that a district court may grant a motion for a new trial if required in the interest of justice. The order granting or denying a motion for a new trial will be upheld by this Court absent an abuse of discretion. State v. Staat (1991), 251 Mont. 1, 9-10, 822 P.2d 643, 648; State v. Goodwin (1991), 249 Mont. 1, 17, 813 P.2d 953, 963.

The basis for a trial court's decision admitting or excluding evidence is whether the evidence is relevant to the issues at trial. Relevant evidence means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it

7

would be without the evidence." Rule 401, M.R.Evid. Further, relevant evidence may be excluded if the probative value of the evidence is substantially outweighed by the prejudice to the defendant. Rule 403, M.R.Evid. Rule 404(b), M.R.Evid., provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

To guard against admission of inadmissible character evidence, this Court has provided a four-part analysis which requires that:

> (1) The crimes, wrongs or acts must be similar.
> (2) The other crimes, wrongs or acts must not be remote in time.
> (3) The evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity with such character; but may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
> (4) Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading of the jury, considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Matt, 814 P.2d at 56. Further, the party offering such evidence must comply with the procedural precautions in Just. Matt, 814 P.2d at 56. In this case, the parties do not dispute that the proper procedural precautions were taken.

The District Court allowed the evidence at trial after applying the modified Just analysis and finding that the evidence met all four parts of the analysis. The court found a similarity

8

between the acts specified in the notice to Garn and the crime charged because all the acts involved young girls, were of a sexual nature, and involved a discrepancy in positions of power of the various actors. The court found the evidence was not remote in time, having occurred a year earlier, and was admissible to show motive, intent, plan, and common scheme. Further, the court found that although this type of evidence is always prejudicial, the probative value of the evidence substantially outweighed the danger of unfair prejudice or confusion of the issues.

The State contends that our recent opinion in State v. Brooks, (Mont. 1993), 857 P.2d 734, 50 St. Rep. 967, is most closely analogous to this case. Brooks was convicted of sexually assaulting an 11-year-old victim in Havre, Montana. At trial, the State introduced other crimes or acts evidence involving a prior conviction whereby Brooks sexually assaulted a 13-year-old boy in Washington state. In both the charged offense and the other crimes evidence, Brooks used a systematic plan to entertain boys in swimming or water games, where he would play with them, catch them off guard, and then sexually assault them unexpectedly. Brooks, 857 P.2d at 735-36. Similarly, the State argues that Garn's other acts evidence was relevant to prove that Garn had sexual contact with K.M. without her consent. The State contends the evidence of Garn's plan, scheme, or method of approaching young girls and offering them modeling, prizes, and money demonstrated that he had ability and capacity to exercise control and authority over the

9

girls, therefore, inferring that the girls were deceived by him, proving that K.M.'s apparent consent was invalid.

Brooks is distinguishable from the present case. The charged offense in Brooks was sexual assault of a young boy. The prior crime or acts evidence admitted at trial involved Brook's prior conviction of sexual assault of another boy in Washington state. The crime of sexual assault in Washington state, and the systematic plan used to sexually assault the boy in Havre, were obviously similar. Brooks, 857 P.2d at 736. Here, the charged offense was sexual intercourse without consent. However, the other crimes or acts evidence did not involve any sexual touching or sexual advances toward the girls.

In granting the new trial, the District Court relied on Keys, which involved the question of whether or not the defendant's prior act of indecent exposure and assault was admissible to prove sexual intercourse without consent. Similarly, the issue in the present case is whether Garn's prior crime of giving alcohol to underage girls, and his prior acts of enticing them to pose nude with promises of money and modeling opportunities, were admissible to prove Garn subjected K.M. to the same scheme to coerce K.M. to consent to sexual contact. The District Court applied the four-part Just analysis and found the evidence could not meet the similarity requirement that the evidence have some relevance to prove an issue in dispute. The court, in its memorandum and order, quoted the following paragraph in Keys as its basis for granting a new trial:

10

> While there is no rigid rule for determining when conduct is sufficiently similar, the determination of similarity depends on whether that conduct has some relevance to prove an issue in dispute. We reiterate that in this case the only issue before the jury was whether N.B. consented. We do not find that the indecent exposure incident, followed by an apology from Keys and the fact that he left P.B. alone, is similar or relevant to determine what occurred between N.B. and Keys. The two incidents are so completely different in surrounding circumstances, acts committed, and victims, that we cannot reasonably conclude that one is probative of the other.

Keys, 852 P.2d at 624.

The issues in the present case were whether Garn had sexual intercourse without consent; whether Garn reasonably believed that K.M. was older than 16; and whether Garn subjected K.M. to sexual contact without her consent. The District Court reasoned that the prior crimes or acts did not present facts that Garn touched either of the two girls or that he made any sexual advances toward them, therefore, the evidence was not similar to the present case, where K.M. alleged that Garn sexually assaulted her. The court found that the prior crime evidence whereby Garn supplied alcohol to underage girls, and the prior acts evidence where Garn enticed the two girls to pose naked for him while he photographed them, were not similar or relevant to determine whether Garn subjected K.M. to sexual contact without her consent. We agree with the District Court. Garn's prior crimes or acts are not sufficiently similar or relevant to prove sexual intercourse without consent or sexual assault, and the evidence is inadmissible character evidence.

In Keys, we cited State v. Crist (1992), 253 Mont. 442, 833 P.2d 1052, where we held that evidence of the defendant showing a

11

young girl pornographic magazines and enticing her to dress in a nightgown were not sufficiently similar to a charge of sexual abuse. Keys, 852 P.2d at 624-25. Rather, the evidence was inadmissible character evidence which would tend to distract the trier of fact from the main issue at trial of what occurred on the occasions charged. Keys, 852 P.2d at 625. We concluded that the innuendos that could be drawn from the evidence in Crist, and also from the evidence in Keys, tended to go to the defendants' character and their propensity to act in conformity with the evidence. Keys, 852 P.2d at 624-25. Here, innuendos from Garn's prior crime and acts could also tend to go to his character and his propensity to act in conformity with the evidence. Therefore, the prior crimes and acts evidence could have distracted the jury from the main question at trial of whether Garn had sexual contact with K.M. without her consent.

In sum, we do not find enough similarity between the acts to conclude that the crime of supplying alcohol to underage girls and the prior acts enticing two girls to pose naked for photographs tend to prove whether K.M. consented. The District Court did not abuse its discretion by granting Garn a new trial.

Affirmed.

_____
Justice

12

We concur:

_____

_____

_____

_____

Justices

Justice Fred J. Weber dissents as follows:

The majority concluded that Garn's prior crimes or acts are not sufficiently similar or relevant to prove sexual intercourse without consent or sexual assault, and the evidence is inadmissible character evidence. I disagree with that conclusion.

As pointed out in the majority opinion the issues are whether Garn had sexual intercourse without consent, whether Garn reasonably believed K.M. was older than 16, and whether Garn subjected K.M. to sexual contact without her consent. The majority relies upon State v. Keys (1993), 852 P.2d 621, 50 St.Rep. 547, and concluded that innuendoes from Garn's prior crimes and acts could also tend to go to his character and his propensity to act in conformity with the evidence and that such evidence could have distracted the jury from the main question at trial. The majority then concludes that it did not find sufficient similarity between the acts to conclude that the crime of supplying alcohol to underage girls and enticing them to pose nude for photographs tends to prove whether K.M. consented or not. The position in that regard is set forth in my dissent in Keys and I will not restate the same. I do suggest there has been an improper focus on the actual issue for consideration in this opinion.

I believe that the majority has disregard paragraph (1) of the Modified Just analysis which states:

(1) The crimes, wrongs or acts must be similar.

In substance the majority has concluded that the crimes must be similar before there can be an admission under the Modified Just

14

Rule. As held in numerous other cases, the evidence may be admissible even though it does not consist of crimes or wrongs and consists only of "acts."

The acts on the part of Garn with regard to K.M. showed that he persuaded her to take her clothing off and to be photographed before proceeding further. In a similar manner, the evidence as to S.M. and A.W. established that after Garn had them change into different attire he had them dance while he took polaroid pictures and urged the girls to remove more clothing while he continued to take pictures. Up to that point it is clear that the acts committed against the three girls were similar and almost identical in nature. The evidence further showed that Garn attempted to persuade A.W. to stay and continue modeling for him, but she refused to do so. In the present case, Garn proceeded further, and based upon the evidence submitted at trial engaged in sexual intercourse without consent with K.M., reasonably believing that she was older than sixteen, and subjected K.M. to sexual contact without her consent. It is true that the crimes with which Garn was charged could not have been charged in connection with his conduct with S.M. and A.W. It is apparently that difference in conduct which leads the majority to conclude that Garn's prior acts are not sufficiently similar to prove sexual intercourse without consent or sexual assault, and the evidence is therefore inadmissible. I believe the conclusion of the majority ignores the express wording of the Modified Just Rule which in paragraph (1) does not limit the similarity to crimes only, but allows the proof

15

if "acts" are similar. The acts which are a significant part of the whole transaction in both cases are similar. Under previous cases, the evidence would have been admitted and I believe should have been admitted in this case.

I disagree with the effective narrowing of the Modified Just Rule. I would reverse the granting of a new trial.

_____
Justice