No.   94-270

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

STATE OF MONTANA,

Plaintiff and Respondent,

v.

KENNETH LEROY
WHITLOW,

Defendant and Appellant.

APPEAL FROM:        District Court of the Twenty-First Judicial District,
In and for the County of Ravalli,
The Honorable Jeffrey H. Langton, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

William F. Hooks, Appellate Defender office, Helena, Montana

For Respondent:

Joseph P. Mazurek, Attorney General, Micheal S. Wellenstein,
Assistant
Attorney General, Helena, Montana; George H. Corn, Ravalli
County
Attorney, Hamilton, Montana

Submitted on Briefs: April 24, 1997

Decided: November 25, 1997
Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Kenneth Leroy Whitlow (Whitlow) appeals a jury verdict in the District Court for the Twenty-First Judicial District, Ravalli County, finding him guilty of aggravated kidnaping and sexual intercourse without consent involving a six-year-old girl. We affirm.

We address the following issues on appeal:

1. Whether the District Court abused its discretion in admitting other crimes evidence.

2. Whether the District Court abused its discretion in refusing to strike Dr. Baxter's opinion testimony regarding the victim's credibility.

3. Whether the District Court abused its discretion in refusing to allow Whitlow to admit the entire pretrial interview of Dr. Starr.

4. Whether the prosecutor's comments during closing argument constituted prosecutorial misconduct.

5. Whether the District Court abused its discretion in denying Whitlow's motion for a new trial.

Factual and Procedural Background

On July 8, 1993, Whitlow brought a six-year-old girl (A.J.) into the emergency room of the Marcus Daly Memorial Hospital in Hamilton. He claimed that he had been fishing at Skalkaho Creek when A.J. approached him and told him that she had been raped and that she needed a doctor. At the hospital, Whitlow informed the attending physician that he had a prior record of sexual assault and that he was afraid that he would be blamed for hurting A.J.

A.J. told the doctor that she rode her bicycle to the Pinesdale store to buy some candy and that while she was on her way home, someone picked her up, put her in their car, drove her into the woods and penetrated her vagina with their finger. She originally described her assailant as a younger woman with brown hair, green eyes and red fingernails, who wore long pants and sandals, and who drove a dark blue car and smoked cigarettes. A.J. claimed that she was able to run away from her assailant and that she then came upon Whitlow who brought her to the hospital. A medical examination revealed recent injury and trauma to A.J.'s vaginal area.

The county sheriff and a detective jointly interviewed A.J. at the hospital. She told them that her abductor had been a woman and that the man she found fishing in the woods brought her to the hospital. After the sheriff repeatedly stated that women did not

usually commit such crimes, A.J. began referring to her assailant as a man. A.J. continued to claim in her interviews with law enforcement officers that two separate people were involved, the person who assaulted her and the fisherman. A.J.'s mother later testified that the day after the assault, A.J. had admitted to her that Whitlow was her assailant. However, it was not until several months after Whitlow had been charged with the crime that A.J. divulged this information to law enforcement officers. A.J. testified at trial that Whitlow had a knife and that he had threatened to kill her.

On the day of the assault, Whitlow was taken to the sheriff's office for questioning and subsequently arrested. As Whitlow was being booked into the Ravalli County jail, the jailer noticed traces of blood on his hands. The jailer took scrapings from underneath Whitlow's fingernails and swabbed his fingers. The fingernail scrapings and blood taken from the middle finger of Whitlow's right hand were examined by means of DNA testing and determined to have DNA from both Whitlow and A.J.

A.J.'s clothing was also tested. A red nylon fiber, consistent with the upholstery found in Whitlow's car, was located on the inside of A.J.'s underwear. A hair found woven into the fabric of the underwear was consistent with hair taken from Whitlow's arm.

On August 18, 1993, the State charged Whitlow by Information with the offenses of aggravated kidnaping, in violation of õ 45-5-303, MCA, and sexual intercourse without consent, in violation of õ 45-5-503, MCA. Prior to trial, the State notified Whitlow of its intent to introduce evidence of other crimes. The other crimes the State intended to introduce included Whitlow's 1985 convictions in Alaska for sexually assaulting his daughter and for tampering with a witness and the uncharged sexual fondling of his stepdaughter which occurred from 1991 through mid-1993. Over objection by the defense, the District Court permitted the State to introduce evidence of the 1985 conviction for sexual assault.

Whitlow was convicted by a jury on both counts. He was sentenced to 40 years for the crime of sexual intercourse without consent, 10 years for the crime of aggravated kidnaping, and 10 years for the use of a weapon during the crimes. The District Court, finding Whitlow to be a persistent felony offender, enhanced the aggravated kidnaping sentence by 60 years. The court designated Whitlow a dangerous offender for purposes of parole eligibility.

Whitlow moved for a new trial on the grounds that prosecutorial misconduct and newly discovered evidence concerning the State's expert witness warranted a new trial.

The District Court denied the motion and Whitlow appealed.

Issue 1.

Whether the District Court abused its discretion in admitting other crimes evidence.

Over Whitlow's objection, the District Court permitted the State to introduce evidence at trial of Whitlow's 1985 conviction in Alaska for sexually assaulting his daughter.  To that end, the State introduced a certified copy of the 1985 judgment.  In addition, the Alaska prosecutor testified concerning the underlying acts giving rise to the charge against Whitlow and Whitlow's subsequent conviction.  Whitlow contends that it was error for the court to allow the introduction of this evidence as the State failed to satisfy both substantive and procedural requirements for the admission of other crimes evidence.

A district court has broad discretion to determine whether evidence is relevant and admissible.  State v. Anderson (1996), 275 Mont. 344, 347, 912 P.2d 801, 803 (citing State v. Pace (1995), 272 Mont. 464, 467, 901 P.2d 557, 559; State v. Keys (1993), 258 Mont. 311, 315, 852 P.2d 621, 623).  Absent a showing of an abuse of that discretion, a district court's determination will not be overturned.  Anderson, 912 P.2d at 803.

In State v. Matt (1991), 249 Mont. 136, 814 P.2d 52, we modified the four requirements for introducing evidence of other crimes, wrongs or acts that we had previously set forth in State v. Just (1979), 184 Mont. 262, 602 P.2d 957.  Following the dictates of Rules 403 and 404(b), M.R.Evid., we established the following criteria:

(1)  The other crimes, wrongs or acts must be similar.

(2)  The other crimes, wrongs or acts must not be remote in time.

(3)  The evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity with such character; but may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

(4)  Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading of the jury, considerations of undue delay, waste of time, or needless  presentation of cumulative evidence.

Matt, 814 P.2d at 56.  These criteria have come to be known as the Modified Just Rule.

Under the first prong of this rule, the other crime does not have to be identical to the charged conduct, only sufficiently similar.  State v. Weldy (1995), 273 Mont. 68, 74, 902 P.2d 1, 5 (citing State v. Tecca (1986), 220 Mont. 168, 172, 714 P.2d 136, 138).  The Alaska indictment charged Whitlow with touching his daughter's genitals and breasts and with attempting to engage in penetration.  The current charges are similar in that they include  touching and penetration of A.J.'s genitals.  We hold that Whitlow's prior sexual abuse of his daughter is sufficiently similar in nature to the sexual acts committed against A.J. to satisfy the first prong of the Modified Just Rule.

As to the second prong, Whitlow contends that his 1985 conviction for sexually assaulting his daughter is too remote in time from the currently charged offense thus necessitating exclusion of the other crime evidence. However, we have previously stated that remoteness of the prior crime affects its credibility, not its admissibility. State v. Ramstead (1990), 243 Mont. 162, 167, 793 P.2d 802, 805 (citing State v. Eiler (1988), 234 Mont. 38, 49, 762 P.2d 210, 217; State v. Doll (1985), 214 Mont. 390, 396, 692 P.2d 473, 476).

Whitlow was incarcerated from 1985 through 1989 and was not discharged from parole until September 1990. In finding that the prior sexual assault was not too remote in time, the District Court relied on the fact that Whitlow did not have an opportunity to reoffend during the five-year period he was incarcerated or on parole. A lack of opportunity makes the time between the prior act and the charged offense less significant. State v. Brooks (1993), 260 Mont. 79, 83, 857 P.2d 734, 736-37. Therefore, we hold that the prior crime involving Whitlow's daughter was not too remote in time and thus satisfies the second prong of the Modified Just Rule.

The third prong of the rule deals with the purposes for which the evidence is offered. Whitlow contends that the State failed to show how the prior act furthered any of the purposes it offered as justification for admitting the other crimes evidence. The State originally intended to offer into evidence the witness tampering charge and the uncharged fondling of Whitlow's stepdaughter as well as the 1985 conviction for assaulting his daughter. Thus, the written notices provided by the State included purposes specific to each of these offenses. The 1985 conviction for sexual assault was the only prior act evidence admitted at trial. In its notices, the State asserted that this conviction was admissible to show intent, identity and absence of mistake or accident. These are permissible purposes under the rule. Matt, 814 P.2d at 56.

Evidence of the prior sexual assault was admissible to prove that Whitlow was not the good Samaritan he claimed he was and that his intent was to assault A.J. and to cover up his actions. In addition, the other crime evidence was admissible to prove the absence of mistake or accident in that it was not mere happenstance that Whitlow was in the area when A.J. was assaulted. Finally, the other crime evidence was admissible to prove Whitlow's identity as the individual who assaulted A.J. Therefore, we hold that the prior crime involving Whitlow's daughter was admissible for the purposes of showing intent, identity, and absence of mistake or accident, thus satisfying the third prong of the Modified Just Rule.

The final prong of the rule requires that the other crimes evidence be

excluded if
the probative value of the evidence is substantially outweighed by unfair prejudice to the
defendant. We have previously stated that it is inevitable that the introduction of evidence of a prior crime will have some prejudicial effect on a defendant. Brooks, 857 P.2d at 737 (citing Eiler, 762 P.2d at 218). However, when the prior crime meets the first three elements of the Modified Just Rule, those elements combine to give it great probative weight. Brooks, 857 P.2d at 737. In the instant case, since the evidence of other crimes has met the first three elements of the rule, the cumulative effect is that the probative value of the evidence outweighs any prejudice to Whitlow.

Furthermore, when Whitlow took A.J. to the hospital, he freely admitted to the hospital staff that he had committed a prior sexual assault. Whitlow's statements to the hospital staff were admissible at trial under Rule 801(d)(2)(A), M.R.Evid., and he raised no objection to their introduction. Additionally, Whitlow's claim of unfair prejudice is unpersuasive as Whitlow used his prior conviction to bolster his defense claiming that, because of his prior conviction for sexual assault, it would not make sense for him to take A.J. to the hospital if he had been the one that assaulted her. See State v. Medina (1990), 245 Mont. 25, 31-32, 798 P.2d 1032, 1036. Therefore, we hold that the probative value of the other crimes evidence was not substantially outweighed by any prejudicial effect, thus satisfying the fourth prong of the Modified Just Rule.

In addition to identifying the four substantive requirements for introducing evidence of other crimes, Just established certain procedural protections that were later clarified in Matt. Whitlow contends that the State violated the first of these protections which provides:

Evidence of other crimes, wrongs or acts may not be received unless there has been written notice to the defendant that such evidence is to be introduced. The notice to the defendant shall specify the evidence of other crimes, wrongs or acts to be admitted, and the specific Rule 404(b) purpose or purposes for which it is to be admitted.

Matt, 814 P.2d at 56. Whitlow argues that the State failed to specify in its other crimes notice the purposes for which the other crimes evidence would be offered as required by State v. Croteau (1991), 248 Mont. 403, 812 P.2d 1251. Whitlow contends that the State used an impermissible "shotgun" approach in listing these purposes.

While it does appear that nearly all of the purposes for admitting other crimes evidence under Rule 404(b), M.R.Evid., are stated in the State's "Notice of Intent to

Introduce Evidence of Other Crimes, Wrongs or Acts" and its "Amended Just Notice and Response Brief in Support of Just Notice," the notices did sufficiently apprise the defendant as to why the evidence was admissible under the purposes stated. Moreover, while Croteau does stand for the proposition that the shotgun approach is impermissible, we held in State v. Steffes (1994), 269 Mont. 214, 226, 887 P.2d 1196, 1203-04, that it is not impermissible to state more than one applicable purpose for the admission of other crimes evidence.

In Croteau, the notice that this Court labeled as an impermissible "shotgun" approach was merely a recitation of the purposes listed in Rule 404(b). The notice stated that the evidence was being offered "for the purpose of showing defendant's opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident in committing the offenses charged." Croteau, 812 P.2d at 1254-55.

In the case before us, the State did far more than simply recite the purposes listed in Rule 404(b). In its written notices, the State explained how the facts surrounding the other crimes and the facts surrounding the current charges related to each specific purpose. For example, the State's original notice stated in part:

In regards to the Defendant's conviction for sexual abuse of a minor, the State asserts that this act is admissible under the theory that it tends to establish identity. Since the Defendant has advanced both a general denial and an alibi defense, this evidence tends to identify the Defendant as the person who committed the crime charged, since he has previously had such contacts with a minor.

Similarly, the State's amended notice stated that

the Just material tends to establish that the Defendant has a predilection for young girls and, hence, establishes motive. It also bears on his intent, which it tends to show is to engage in sexual conduct with minor girls.

This is not at all similar to the "shotgun" approach that we held impermissible in Croteau.

Therefore, we conclude that the State did satisfy both the substantive and procedural requirements for the admission of the other crimes evidence as set forth in the Modified Just Rule.

Accordingly, we hold that the District Court did not abuse its discretion when it admitted evidence of Whitlow's other crimes.

Issue 2.

Whether the District Court abused its discretion in refusing to strike Dr. Baxter's opinion testimony regarding the victim's credibility.

The State retained Dr. Sarah Baxter, a clinical psychologist, to conduct diagnostic

evaluations of A.J. Dr. Baxter met with A.J. eight times over a five-month period for a total of ten hours. At trial, Dr. Baxter testified regarding A.J.'s changing her story from that of being assaulted by a woman to that of being assaulted by Whitlow. Dr. Baxter explained that child victims of trauma tend to misperceive important aspects of the traumatic event. She concluded that A.J. was a victim of trauma and that, in her opinion, A.J. did have a misperception. Dr. Baxter attributed A.J.'s different stories to her increasing feeling of safety as she gradually realized that the threats made by her assailant would not be carried out. Dr. Baxter testified that, in her opinion, A.J. was very credible.

Whitlow argues that the District Court should have stricken Dr. Baxter's opinion testimony regarding A.J.'s credibility. Whitlow contends that there was no foundation for this testimony because Dr. Baxter's conclusions were reached prior to the time A.J. changed her story. Whitlow also claims that Dr. Baxter failed to follow the standard practice for experts in the field and that her testimony should have been stricken on that basis as well. The State contends that Whitlow failed to timely object to Dr. Baxter's testimony, thus he has waived appellate review of this issue.

In order to properly preserve an issue for appeal, a defendant must make a timely objection or motion to strike. State v. Stuit (1994), 268 Mont. 176, 182, 885 P.2d 1290, 1294 (citing Kizer v. Semitool, Inc. (1991), 251 Mont. 199, 207, 824 P.2d 229, 234). For an objection to be timely, it must be made as soon as the grounds for the objection become apparent. Stuit, 885 P.2d at 1294. Dr. Baxter testified during the State's case-in-chief regarding A.J.'s credibility, however, Whitlow did not object until his cross examination of Dr. Baxter during the State's rebuttal.

Here, the timing of Whitlow's objection worked to his disadvantage since the jury was allowed to hear and, for some time prior to the objection, consider the disputed testimony. Accordingly, to the extent Whitlow suffered prejudice because of the timing of his objection he, himself, was responsible for that prejudice. More importantly, albeit that it was untimely, Whitlow did preserve his claim of error at trial so as to permit the trial judge to either sustain the objection during cross-examination or to strike the testimony and admonish the jury not to consider it. Accordingly, while Whitlow's objection was not timely since it was not made as soon as the grounds for the objection became apparent, because this claim of error was preserved in the District Court and

is not being raised for the first time on appeal, we choose to address the merits of this issue.

The fact that Dr. Baxter did not meet with A.J. after A.J. changed her story does not mean that Dr. Baxterþs opinion lacked adequate foundation. At the most, it goes to the weight of the testimony and Whitlow did argue to the jury that it should give less weight to Dr. Baxter's opinion that A.J. was credible since Dr. Baxter did not meet with A.J. after A.J. changed her story. Furthermore, Dr. Baxter's opinion concerned A.J.'s overall credibility, not whether the final change in her story was truthful.

In State v. Scheffelman (1991), 250 Mont. 334, 820 P.2d 1293, we set forth three factors to determine whether an expert may testify to the credibility of a child sexual abuse victim after the child's credibility has been attacked. These factors are: (1) the expert must have extensive first-hand experience with sexually abused and non-sexually abused children; (2) the expert must have a thorough and up-to-date knowledge of the professional literature on child sexual abuse; and (3) the expert must have objectivity and neutrality about individual cases as required of other experts. Scheffelman, 820 P.2d at 1298. At trial, Whitlow conceded that Dr. Baxter met the first two requirements of Scheffelman. As to the third requirement, Dr. Baxter testified that her role was to conduct a lengthy evaluation of A.J. and that, in itself, requires objectivity and neutrality as there is no attempt made to interact with the child. Whitlow argued, on the other hand, that Dr. Baxter was A.J.'s therapist and as such she was not objective and neutral. However, contrary to Whitlow's contentions, Scheffelman did not hold that a therapist lacks objectivity or neutrality. We hold that the foundational requirements of Scheffelman were met in this case.

Whitlow, relying on State v. Henderson (1994), 265 Mont. 454, 877 P.2d 1013, claims that Dr. Baxter failed to follow the standard practices of experts in the field by forming her opinion as to A.J.'s credibility based on limited statements from A.J. On the contrary, Dr. Baxter did follow standard practice by reviewing as much information as possible and by meeting with A.J. on several occasions. She met with A.J. eight times over a five-month period. During the first meeting, Dr. Baxter conducted an extensive clinical interview. She also reviewed the sheriff's taped interviews of A.J., the Pinesdale Police Chief's notes from his interviews with A.J., the hospital reports and the

investigatory material regarding the crime.

Accordingly, we hold that the District Court did not abuse its discretion in refusing to strike Dr. Baxter's opinion testimony regarding A.J.'s credibility.

Issue 3.

Whether the District Court abused its discretion in refusing to allow Whitlow to admit the entire pretrial interview of Dr. Starr.

Dr. Judith Starr, an expert called by the defense, testified that there were problems with the interview process and that those problems may have led to false accusations against Whitlow.  The prosecutor had previously conducted an interview of Dr. Starr which, when transcribed, was 125 pages long.  During cross examination, the State asked Dr. Starr about certain statements she had made in that interview.  Whitlow asked the court to require that the entire transcript be given to the jury because the State was taking Dr. Starr's statements out of context.  The court denied Whitlow's request and refused to require admission of the entire transcript.

Whitlow contends that the District Court should have granted counsel's request pursuant to Rule 106, M.R.Evid., which provides:

> Remainder of or related acts, writings, or statements.
> (a)  When part of an act, declaration, conversation, writing or recorded statement or series thereof is introduced by a party:
> (1)  an adverse party may require the introduction at that time of any other part of such item or series thereof which ought in fairness to be considered at that time; or
> (2)  an adverse party may inquire into or introduce any other part of such item of evidence or series thereof.
> (b)  This rule does not limit the right of any party to cross-examine or further develop as part of the case matters covered by this rule.

In denying Whitlow's request to require that the full transcript of the interview be given to the jury, the District Court stated that Whitlow could bring other relevant portions of the interview to the jury's attention.  On re-direct, however, Whitlow did not introduce any other portions of the interview.

Whitlow incorrectly claims that he had the right under Rule 106 to introduce the entire 125-page interview.  The doctrine of completeness permits examination of the balance or portions of the same document, correspondence, or conversation only where such portions on balance are relevant and throw light upon the parts already admitted or bear on the same subject.  State v. Campbell (1978), 178 Mont. 15, 19, 582 P.2d 783, 785 (citations omitted).

"Rule 106 does not mandate the inclusion of related evidence.  The rationale behind the inclusion of supplementary evidence is that it is allowed if it is needed to make the primary evidence understandable."  Cline v. Durden (1990), 246 Mont. 154, 162, 803

P.2d 1077, 1082 (citing State v. Sheriff (1980), 190 Mont. 131, 619 P.2d 181). Here, Whitlow never showed which specific portions of the interview were relevant or how they might throw light upon those portions already introduced by the State.
Accordingly, we hold that the District Court did not abuse its discretion in refusing to allow Whitlow to admit the entire pretrial interview of Dr. Starr.

Issue 4.

Whether the prosecutor's comments during closing argument constituted prosecutorial misconduct.

Dr. Starr testified that Dr. Ralph Underwager was a leading authority in the field of false accusations and that she relied on his expertise in forming her opinion. In cross examination, the prosecutor questioned Dr. Starr regarding an article in a Dutch journal that professed that Dr. Underwager supported pedophilia. When the State attempted to introduce the article, defense counsel objected and the court denied the State's request.
In closing arguments, the State, in its rebuttal, referred to defense counsel's objection to introducing the article:

I also want to go back, as far as blaming the prosecutor, and how we took Dr. Starr's -- or Doctor Underwager's comments out of context.
Recall who it was that wanted to put the entire document with the whole interview of him into evidence -- and remember who protested and kept that from coming before you -- just so you could see the entire article.

Trial Transcript at 1468.

Whitlow contends that by this statement, the prosecutor engaged in misconduct which denied Whitlow a fair trial. He asserts that the prosecutor insinuated that Whitlow was keeping vital information from the jury. The State asserts that these comments were in direct response to Whitlow's claim in his closing argument that the prosecutor had taken Dr. Underwager's views out of context and had thereby misled the jury.
To rise to the level of prosecutorial misconduct, the conduct in question must be found to be improper or objectionable. See State v. Johnson (1988), 233 Mont. 473, 476-77, 760 P.2d 760, 762. We do not find that to be the case here. Whitlow's own closing argument opened the door for the prosecutor's comments.
Furthermore, to be considered reversible error, the alleged prosecutorial misconduct must constitute a denial of a defendant's substantial rights. State v. Arlington (1994), 265 Mont. 127, 150, 875 P.2d 307, 321 (citing State v. Nichols (1987), 225 Mont. 438, 448, 734 P.2d 170, 176). In the instant case, in view of the overwhelming evidence against Whitlow, the prosecutor's comments were not so egregious as to deprive Whitlow of his right to a fair trial and due process.
Accordingly, we hold that the prosecutor's comments during closing argument

did
not constitute prosecutorial misconduct and Whitlow was not deprived of his right
to a
fair trial
and due process.

Issue 5.

Whether the District Court abused its discretion in denying Whitlow's
motion for a new trial.

A decision to grant or deny a motion for a new trial, including a motion
based on
newly discovered evidence, lies within the sound discretion of the district court
and we
will not disturb that decision unless an abuse of discretion is shown. State v. Fina
(1995),
273 Mont. 171, 175, 902 P.2d 30, 33 (citing Matter of J.R.T. (1993), 258 Mont. 520,
522, 853 P.2d 710, 711).

Whitlow moved for a new trial on three grounds: (1) newly discovered
evidence;
(2) failure of the State to produce evidence favorable to the defense; and (3)
prosecutorial
misconduct. First, Whitlow argued that Dr. Baxter was A.J.'s therapist and as such
she
could not testify as to A.J.þs credibility. Whitlow claimed that evidence of Dr.
Baxter's
status as A.J.'s therapist was not discovered until after trial. Second, Whitlow
contended
that the prosecutor's withholding of this evidence regarding Dr. Baxter's status was
a
violation of the State's duty under Brady v. Maryland (1963), 373 U.S. 83, 83 S.Ct.
1194, 10 L.Ed.2d 215, to produce evidence favorable to the accused. Third, Whitlow
argued prosecutorial misconduct in that false testimony regarding the prior act was
introduced at trial.

The District Court denied the motion concluding that Whitlow failed to
satisfy the
six-part standard for granting a new trial based on newly discovered evidence as set
forth
in State v. Greeno (1959), 135 Mont. 580, 342 P.2d 1052. Additionally, the court
determined that even if Dr. Baxter's role was that of both evaluator and therapist,
her
testimony would nonetheless be admissible under State v. Scheffelman (1991), 250
Mont.
334, 820 P.2d 1293.

As noted by the District Court, this Court has consistently applied the
following
criteria in addressing motions for a new trial based on newly discovered evidence:
(1) That the evidence must have come to the knowledge of
the applicant since the trial; (2) that it was not through want
of diligence that it was not discovered earlier; (3) that it is so
material that it would probably produce a different result upon
another trial; (4) that it is not cumulative merely--that is, does

not speak as to facts in relation to which there was evidence at the trial; (5) that the application must be supported by the affidavit of the witness whose evidence is alleged to have been newly discovered, or its absence accounted for; and (6) that the evidence must not be such as will only tend to impeach the character or credit of a witness.

Greeno, 342 P.2d at 1055. Since the Greeno criteria are stated in the conjunctive, each one must be established before a defendant is entitled to a new trial on the basis of newly discovered evidence. Fina, 902 P.2d at 34.

Whitlow contends that after trial, he learned that Dr. Baxter received $153.68 from the Crime Victim's Unit for A.J.'s treatment. He argues that a psychologist who performs as a therapist treating a victim may receive payment from the Crime Victim's Unit, but a psychologist who performs as an evaluator is not entitled to be paid. He maintains that the payment to Dr. Baxter proves that she was A.J.þs therapist and as such was not entitled to testify regarding A.J.þs credibility.

Whitlow has failed to satisfy three of the six criteria established in Greeno for granting a new trial based on newly discovered evidence. First, evidence of possible payment to Dr. Baxter by the Crime Victim's Unit came to Whitlow during the trial. Dr. Baxter stated in cross examination that she had billed the Crime Victim's Unit. Second, Whitlow failed to pursue this line of questioning. It was through want of diligence on Whitlowþs part that the actual payment to Dr. Baxter by the Crime Victim's Unit was not discovered earlier. Third, the fact that Dr. Baxter received compensation from the Crime Victim's Unit was not so material that it would have produced a different result at trial. We have stated elsewhere in this opinion that whether Dr. Baxter was referred to as an evaluator or a therapist made no difference in this case.

Whitlow also based his motion for a new trial on the contention that evidence of the payment to Dr. Baxter by the Crime Victim's Unit should have been produced prior to trial and that failure to do so was a Brady violation. However, even assuming this information fell within the parameters of Brady (a question we do not decide), there is no indication that the State was aware prior to trial that Dr. Baxter had submitted a claim to the Crime Victim's Unit. "[T]he government's obligation to disclose exculpatory or impeachment information under Brady is limited to that information which is then known to the government." United States v. Morris (7th Cir. 1996), 80 F.3d 1151, 1169. "Brady requires the prosecution to disclose to the defendant only evidence in the

prosecution's possession." United States v. Jones (8th Cir. 1994), 34 F.3d 596, 599.

Finally, Whitlow contends that the Alaska prosecutor's testimony concerning Whitlow's prior act was false and that the State's failure to correct the false testimony constituted prosecutorial misconduct. The Alaska prosecutor testified at trial that the underlying facts that gave rise to the Alaska sexual assault charge "involved genital fondling, penetration and breasts as well." Whitlow objected to her statement and moved to strike claiming that the testimony was false as he had not been convicted of penetration. The District Court overruled the objection.

The State did not elicit inaccurate information regarding the prior crimes evidence. The Alaska prosecutor was testifying to the facts underlying Whitlow's 1985 conviction for sexually assaulting his daughter, not the actual charges in the indictment. Whitlow failed to explain how this testimony was false or how it may have affected the outcome of the trial. Moreover, Whitlow could have corrected the misperception on cross examination but made no attempt to do so. As we stated elsewhere in this opinion, to rise to the level of prosecutorial misconduct, the conduct in question must be found to be improper or objectionable. See State v. Johnson (1988), 233 Mont. 473, 476-77, 760 P.2d 760, 762. We do not find that to be the case here.

Accordingly, we hold that the District Court did not abuse its discretion in denying Whitlow's motion for a new trial.

Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ WILLIAM E. HUNT, SR.
/S/ JIM REGNIER