OPINION TO THE GOVERNOR.

JANUARY 24, 1949.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

OPINION TO GOVERNOR in response to inquiry as to constitutionality of public laws 1946, chapter 1750, as amended, authorizing city of Providence to provide housing accommodations.

January 24, 1949

To His Excellency John O. Pastore,
    Governor of the State of Rhode Island
        and Providence Plantations.

We have received from your excellency a request for our written opinion, in accordance with the provisions of section 2 of article XII of amendments to the constitution of this state, upon the following question.

"Does the providing of housing by the City of Providence for veterans and their families and for families of servicemen and for other persons in accordance with Chapter 1750 of the Public Laws. approved April 23, 1946, as amended by Chapter 1859 of the Public Laws approved April 28, 1947, and by Chapter 2069 of the Public Laws approved April 30, 1948, constitute a public purpose for which public money may be spent, private property may be taken by condemnation, public debt may be incurred and taxes may be levied within the fundamental principle of constitutional law that those things may be done only for a public purpose and not for a private purpose?"

Section 1, chap. 1750, P. L. 1946, in so far as pertinent is as follows: "It is hereby declared that an acute housing shortage exists in the city of Providence so that many families and particularly veterans and their families and families of servicemen are unable to obtain housing, and therefore, a public exigency, emergency and distress now exists, and the providing of housing for such persons constitutes a public use and purpose for which public money should be spent and private property acquired, and is a governmental function of state concern." To remedy the situation, the remainder of this section authorizes the city and the Providence housing authority to enter into contracts and agreements in furtherance "of any housing project in the city of Providence."

Section 2 of said chapter authorizes the city to issue bonds "to an amount not exceeding two million five hundred thousand ($2,500,000) dollars" for the purpose specified

in section 1. Except for the fact that the sum just mentioned was increased "to an amount not exceeding two million eight hundred fifty thousand ($2,850,000) dollars," by P. L. 1948, chap. 2069, all other matters in the two amendments to P. L. 1946, chap. 1750, have no material bearing in the determination of the question before us. Hereinafter, unless otherwise indicated, the term "act" will mean said chap. 1750.

Although at first sight the question as framed appears to relate to an act for the benefit of veterans and servicemen, yet on examination of the act itself its declared purpose is to relieve an acute housing shortage affecting the inhabitants of the city generally, even though veterans and servicemen may have been particularly affected by such shortage. Any inhabitant of the city, irrespective of service in the armed forces, comes within the scope of the act. We therefore cannot treat it as a veterans' act, that is, one which authorizes the expenditure of public funds for the sole benefit of those who served the nation in the armed forces in time of war.

It is to be noted also that the city's authority to engage in any housing project is limited to the expenditure of an amount "not exceeding" the sum specified in the act, as amended. We find nothing in this act that empowers the city to engage generally in the business of providing housing accommodations for its inhabitants after the expenditure of that sum. It can only proceed in such an enterprise in the manner and to the extent prescribed by the act to relieve "a public exigency, emergency and distress" which the legislature declared to be existing at the time of its approval, April 23, 1946.

The issue raised by the question then is whether the act as thus construed is constitutional. We entertain no doubt that, in the absence of unusual and exigent circumstances, the state cannot, under our constitution, engage generally in the business of providing rental housing accommodations or of buying and selling houses by the exercise

of the power of eminent domain and the expenditure of public funds. And, *a fortiori,* the state cannot authorize its political subdivisions to engage in such business. It is true that housing is a necessary of life but that fact of itself does not qualify it for governmental action under our constitution. Food, fuel, clothing and numerous other things are equally necessary to the maintenance of life, but in our judgment it cannot be successfully contended that ordinarily the government, state or local, has the power to take private property, to tax, and to use public money so obtained for the purpose of engaging in the purchase and sale of those articles, unless the exercise of such powers conforms to the power granted or reserved in the constitution.

According to our understanding, neither the state nor the city believes that it can do so in normal times under normal conditions. Their position is, as we interpret it, that, because of abnormal conditions arising from the combination of a variety of adverse circumstances, the ordinary agencies for providing adequate housing have been impeded from functioning in such a marked degree as to cause widespread distress to people in need of housing in the city of Providence. This distress should be relieved, it is claimed, by governmental action for the time being and while such abnormal conditions prevail, so as not to jeopardize the health, safety or morals of the public generally.

The declared purpose of the act is therefore in effect to relieve widespread and acute distress in an emergency. But the declaration of an emergency alone is not sufficient to justify the exercise of the power of eminent domain and the use of public money for an otherwise private purpose unless it can be shown that there is a power under the constitution which the emergency summons into action. Mere emergency cannot be made the source or creator of that power. *Ex parte Milligan,* 4 Wall. 2. However, "although an emergency may not call into life a power which has never lived, nevertheless emergency may afford a reason for

the exertion of a living power already enjoyed." *Wilson* v. *New,* 243 U. S. 332, 348. Relying on that view, the supreme court in the later case of *Home Building & Loan Ass'n* v. *Blaisdell,* 290 U. S. 398, at pages 425 and 426, expressed itself as follows: "Emergency does not create power. Emergency does not increase granted power or remove or diminish the restrictions imposed upon the power granted or reserved * * *. While emergency does not create power, emergency may furnish the occasion for the exercise of power."

In the *Blaisdell* case the Minnesota legislature, having first found facts calling for the exercise of its governmental power and having declared that both the resulting condition and the relief were temporary, passed a statute providing for the adjustment of mortgage debts. The United States supreme court sustained the act on the ground that as an emergency was found to exist which called for the exercise of such power it would not go beyond the legislature's findings. But in *W. B. Worthen Co.* v. *Thomas,* 292 U. S. 426, that court held a statute unconstitutional because it lacked the conditions and limitations of time which were present in the Minnesota statute in the *Blaisdell* case.

The power discussed in the above-cited cases was the general reserved power in the government to protect and promote the health, safety and morals of the people, commonly denominated the police power. *Panhandle Eastern Pipe Line Co.* v. *State Highway Comm'n,* 294 U. S. 613. This power, which defies accurate definition, is not, however, without limitation. Under normal conditions the state cannot actively engage or participate in private business activities. In *Ohio* v. *Helvering,* 292 U. S. 360, at page 369, the supreme court said: "Nevertheless, the police power is and remains a governmental power, and applied to business activities is the power to regulate those activities, not to engage in carrying them on."

But the police power may be exercised by the state in case of an emergency which the legislature has found to exist as a matter of fact, and which it has declared is causing widespread distress to a large portion of the population with resulting danger to the health, safety or morals of the public generally. Provided that the legislation which authorizes the state or its local subdivisions to engage in a business activity is temporary and reasonably related to and limited by the duration of the existing and declared emergency, it is our judgment that the constitutional inhibitions against the legislature applying public funds for a private purpose and taking private property for a public use are not violated, as in such an emergency the action of the state is directed at the accomplishment of what in reality for the time being is a public purpose.

In *Jones* v. *City of Portland*, 245 U. S. 217, the supreme court declined to interfere where a statute of the state of Maine authorized its municipalities to engage in the business of selling coal at retail, without profit, in an emergency found to exist by its legislature. In that case the court, at page 221, said: "While the ultimate authority to determine the validity of legislation under the Fourteenth Amendment is rested in this court, local conditions are of such varying character that what is or is not a public use in a particular State is manifestly a matter respecting which local authority, legislative and judicial, has peculiar facilities for securing accurate information. In that view the judgment of the highest court of the State upon what should be deemed a public use in a particular State is entitled to the highest respect."

Likewise, in *Green* v. *Frazier*, 253 U. S. 233, the supreme court held that a series of statutes in North Dakota authorizing certain designated officers and officials of that state to engage in its behalf in various business and commercial enterprises did not violate the fourteenth amendment to the federal constitution. In that case, as in *Jones* v. *City of Portland, supra,* the supreme court deferred to the

legislative and judicial findings of the state that a need for such governmental action in fact existed, saying at page 239: "When the constituted authority of the State undertakes to exert the taxing power, and the question of the validity of its action is brought before this court, every presumption in its favor is indulged, and only clear and demonstrated usurpation of power will authorize judicial interference with legislative action." See also *Union Line Co.* v. *Chicago & N. W. Ry.*, 233 U. S. 211; *O'Neill* v. *Leamer*, 239 U. S. 244.

The cases that we have just referred to are not authority for what is or is not a public use in a state. It is our opinion that they represent merely the settled policy of the United States supreme court that, under the fourteenth amendment to the federal constitution, it will not interfere with the conclusion reached by any state, through its legislative and judicial branches of government, that there was a public use if under certain ascertained and declared circumstances a widespread and acute condition of emergency existed which might endanger the health, safety or morals of the community generally, unless such conclusion was *clearly not well founded.*

A mere legislative declaration that an emergency exists does not of itself create an emergency that will warrant the state in enacting legislation in the exercise of its police power. To justify recourse to that power, the declaration of an emergency must rest upon findings of fact by the legislature as to the existence of unusual circumstances which, unless temporarily relieved, would endanger the public health, safety or morals. When the court finds that a statute is within a proper exercise of the police power it will not inquire into the wisdom, propriety or adequacy of such legislation, unless it plainly appears that the conclusion of the legislature in the matter was clearly not well founded, but was arbitrary and unreasonable. See *Joslin Mfg. Co.* v. *City of Providence,* 262 U. S. 668; *City of Newport* v. *Newport Water Corp.,* 57 R. I. 269;

*Joslin Mfg. Co.* v. *Clarke,* 41 R. I. 350. In *Narragansett Electric Lighting Co.* v. *Sabre,* 50 R. I. 288, at page 298, this court said that it was for the court to determine "whether the legislature could reasonably consider the use to which the property is to be devoted a public use; otherwise a legislative declaration that a use is public when it is *obviously* private would conclude the question of the constitutionality of the act." (italics ours)

Statutes intended to provide relief in an emergency depend for their validity upon a proper exercise of the police power and ordinarily contain a declaration of legislative findings of fact involving the public health, safety or morals. The act in question here, in contrast with similar statutes both state and federal, does not contain a declaration of such findings in express language. Nor is it expressly limited in time or scope to the declared emergency. But notwithstanding these deficiencies, the factual basis for the declaration by the legislature of an emergency, resulting from an acute housing shortage that was causing widespread distress to the inhabitants of Providence, and the limitation of the act in time and scope to the declared emergency can and should be inferred or presumed.

In this connection we can and do take judicial notice of the fact that when the act was passed the existence of an acute, widespread and distressing shortage in housing accommodations endangering the health, safety or morals of the public generally was a matter of common knowledge. Moreover, in *Fritz* v. *Presbrey,* 44 R. I. 207, at page 212, this court said: "If a state of facts could exist which would justify legislation, it is to be presumed that it did exist." Furthermore, where a statute is susceptible to two reasonable constructions, one of which would raise a serious question of its constitutionality and the other would not, the latter construction should be adopted. *Fritz* v. *Presbrey, supra; Gorham* v. *Robinson,* 57 R. I. 1. Finally it is well settled that before a statute is declared unconstitutional the court should be convinced of its unconstitutionality beyond

a reasonable doubt. *East Shore Land Co.* v. *Peckham,* 33 R. I. 541; *Prata Undertaking Co.* v. *Board of Embalming and Funeral Directing,* 55 R. I. 454, and cases cited.

Applying these rules to the act and circumstances before us we cannot say that it was clearly unreasonable for the legislature to find that the health, safety or morals of the inhabitants of the city of Providence were endangered generally by such widespread, acute and distressing housing shortage. Under our construction the act, being temporary in nature and limited in time and scope to an exigent public necessity in a declared emergency, comes within the proper exercise of the police power of the state.

Confining ourselves strictly to the terms of the act and its amendments as herein construed in accordance with the above-mentioned rules, and not being concerned here with any other housing act, it is our opinion that the expenditure of public money in the manner and to the extent specified in the act referred to in the question now before us constitutes an expenditure of money for a public purpose.

> EDMUND W. FLYNN
> ANTONIO A. CAPOTOSTO
> HUGH B. BAKER
> FRANCIS B. CONDON
> JEREMIAH E. O'CONNELL