**STATE**

v.

**Kailash MOHAPATRA.**

**No. 2004–21–C.A.**

Supreme Court of Rhode Island.

July 25, 2005.

Aaron L. Weisman, Providence, for Plaintiff.

John E. MacDonald, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

WILLIAMS, Chief Justice.

The defendant, Kailash Mohapatra (defendant), appeals from a Superior Court conviction of one count of second-degree child molestation in violation of G.L.1956 § 11–37–8.3. This case came before the Supreme Court for oral argument on February 3, 2005, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and proceed to decide the appeal at this time. We affirm the conviction.

### I

### Facts and Travel

At a jury trial in January 2003, the complainant, whom we will refer to as Ashley,[1] testified that defendant, a family friend, inappropriately had touched and kissed her on several occasions. The incident that gave rise to the criminal charges occurred in December 1997, when Ashley was thirteen years old. Ashley spent the night at a mutual friend's home in Coventry. After the children had retired to bed and the adults started watching a movie,

---

1. This is a fictitious name.

defendant woke Ashley to play a game of air hockey. But when the table would not work, Ashley returned to bed. The defendant laid down beside her in a twin-sized bunk bed. As Ashley lay on her side, facing the wall, defendant rubbed her breasts from behind and attempted to put his hands down her underpants—but she managed to prevent him from doing so by pressing against the wall and moving her body to evade his hand.

Ashley testified to additional incidents of inappropriate contact that occurred before the charged incident. In July 1997, defendant forcefully kissed her on the mouth with his tongue during a game of hide-and-seek at a party at Ashley's home. In August 1997, defendant pulled her into a playroom during a birthday party at a different family friend's house; kissed her again in a similar manner with his tongue, and also felt her vagina and buttocks over her clothes.

The trial justice admitted, over defendant's objection, the testimony of Kim Baldino (Baldino), a young woman who had met defendant in early 1997 while she cared for his daughter at a child-care facility in Connecticut. The defendant invited Baldino and two of her coworkers to his house for dinner to thank them for their assistance. Although she was only eighteen- or nineteen-years-old at the time,[2] Baldino testified that defendant gave her and her coworkers several alcoholic beverages with dinner. After the coworkers left and defendant's wife went upstairs after dinner, defendant persuaded her to spend

the night.[3] Baldino testified that defendant briefly played a pornographic tape on the television and gave her a change of clothes. Baldino began paging her coworkers with the number "9–1–1," hoping they would return to defendant's house. After she changed, defendant then returned to the room, reached under her shirt and bra and touched her breast. Baldino testified that her coworkers returned and she then left defendant's home.

The jury convicted defendant on the single count of molesting Ashley. The defendant appeals, alleging several errors.

## II

## Analysis

### A

### Prior Sexual Misconduct Involving Baldino

■ The initial question presented on appeal is whether Baldino's testimony concerning defendant's prior sexual misconduct is admissible in a criminal trial charging him with child molestation. "'[T]he admissibility of evidence is within the sound discretion of the trial justice, and this Court will not interfere with the trial justice's decision unless a clear abuse of discretion is apparent.'" *State v. Grayhurst*, 852 A.2d 491, 504 (R.I.2004).

Rule 404(b) of the Rhode Island Rules of Evidence reads:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the char-

---

2. On this point, the record is less than clear. According to a police report found in the record, Baldino's date of birth is October 22, 1977. Though she did not testify to her age at the time of the incident, she did testify that the incident occurred in the fall of 1996 or spring of 1997, which would make her either eighteen or nineteen at the time of the incident. Furthermore, the state does not dispute

the fact that Baldino had reached the age of majority at the time of the incident. For these reasons, it seems evident that Baldino was either eighteen or nineteen at the time of the incident.

3. Baldino testified that her consumption of alcohol was the primary reason she agreed to spend the night.

acter of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that defendant feared imminent bodily harm and that the fear was reasonable."

■■■■ In molestation or sexual assault cases, evidence of a defendant's prior sexual misconduct cannot be admitted to prove that "defendant is a bad man, and that he has a propensity toward sexual offenses and, therefore, probably committed the offenses with which he is charged." *State v. Quattrocchi,* 681 A.2d 879, 886 (R.I.1996). Instead, when the evidence offered proves prior sexual misconduct with someone other than the complainant, "nonremote similar sexual offenses" are admissible under the exceptions of Rule 404(b).[4] *State v. Jalette,* 119 R.I. 614, 627, 382 A.2d 526, 533 (1978); *accord State v. Brigham,* 638 A.2d 1043, 1045 (R.I.1994). Offenses will be considered sufficiently "nonremote" and "similar" when they are "closely related in time, place, age, family relationships of the victims, and the form of the sexual acts." *Brigham,* 638 A.2d at 1045 (quoting *State v. Pignolet,* 465 A.2d 176, 181–82 (R.I.

1983)). Furthermore, the evidence is admissible "only when that exception is relevant to proving the charge lodged against the defendant," and "only when reasonably necessary." *Jalette,* 119 R.I. at 627, 382 A.2d at 533. Finally, the trial justice must instruct the jury on the limited purpose for which the evidence may be considered. *State v. Hopkins,* 698 A.2d 183, 185 (R.I. 1997).

This court repeatedly has held that prior sexual misconduct, perpetrated by a defendant against persons other than the complainant, must be sufficiently similar and contemporaneous to support a ruling of admissibility by the trial justice. *See Brigham,* 638 A.2d at 1045 (affirming the admission of evidence of prior sexual misconduct perpetrated against the victim's sister by their stepfather because it was "probative of a plan or scheme by defendant to assault his stepdaughters prior to their thirteenth birthdays"); *State v. Lamoureux,* 623 A.2d 9, 10–13 (R.I.1993) (affirming the admission of evidence of prior sexual misconduct perpetrated by defendant against two different women whom he met at the same Providence nightclub, where he gained the confidence of the victims by discussing issues of common interest and then requested a ride home);

---

**4.** It is helpful to clearly establish what law is not applicable to this precise issue. Related to, yet readily distinguishable from, the rule of law set out above is the "lewd disposition" exception, which governs only prior sexual misconduct committed against the "particular person," referring to the victim. *State v. Jalette,* 119 R.I. 614, 627, 382 A.2d 526, 533 (1978) (citing to a California opinion clearly distinguishing the "lewd disposition" exception from the exception governing similar sexual offenses committed against persons other than the complainant). When asked to reconsider this exception after enacting the Rhode Island Rules of Evidence, we reiterated that the lewd disposition exception "is almost universally recognized in cases involving proof of prior incestuous relations between the defen-

dant and *the complaining victim.*" *State v. Tobin,* 602 A.2d 528, 532 (R.I.1992) (quoting *Getz v. State,* 538 A.2d 726, 732 (Del.1988)) (emphasis added); *accord State v. Chalk,* 816 A.2d 413, 423 (R.I.2002).

Furthermore, we have refused to extend this exception to govern testimony of persons other than the victim. The dissenting justice in *State v. Quattrocchi,* 681 A.2d 879, 889 (R.I.1996), failed to convince the majority of the Court that evidence of prior sexual misconduct involving children other than the victim should be admitted "under the lewd- or lustful-disposition exception to the general rule prohibiting the introduction of uncharged bad acts as evidence of a defendant's character or propensity to commit the charged crime."

*State v. Cardoza,* 465 A.2d 200, 203 (R.I. 1983) (affirming the admission of evidence of prior sexual misconduct perpetrated against the victim's sister during the same period of time and in the same place); *State v. Pignolet,* 465 A.2d at 181 (affirming the admission of evidence of prior sexual misconduct perpetrated against the victim's sister by their stepfather because most of the events took place in the same period and all the events occurred in the same house, under the threat of violence, and while the victim's mother was working evenings); *see also Hopkins,* 698 A.2d at 185–86 (affirming the admission of evidence of prior sexual misconduct perpetrated against boys of a similar age to the victim, even though the incidents of abuse occurred ten years apart, because the incidents were committed "in a like manner" against boys who "were under [defendant's] control or influence"). In contrast, evidence of prior sexual misconduct committed against young girls other than the complainant was not admissible under Rule 404(b) because motive, intent and identity were not at issue in that particular case and "[t]he evidence had no independent relevance that was reasonably necessary in order to prove the elements of the crime charged." *Quattrocchi* 681 A.2d at 887.

■ Turning to the case herein, defendant's primary argument, that the age difference between Baldino and Ashley renders the two incidents dissimilar, must fail. To reiterate, the factors to be considered when comparing the charged incident and the prior sexual misconduct are " 'time, place, age, family relationships of the victims, and the form of the sexual acts.' " *Brigham,* 638 A.2d at 1045. We recently held in *Hopkins,* 698 A.2d at 185–86, that the lack of the time factor, specifically a lapse in time of ten years between the charged incident and the prior sexual misconduct, was insufficient to render evidence of that prior incident inadmissible. Here, although Baldino may have reached the age of majority at the time of the incident, similar age is but one of the factors to be analyzed when comparing the charged incident with the prior sexual misconduct.

When evaluating the remaining factors, the record supports the trial justice's conclusion that the two incidents are "nonremote" and "similar." Concerning time, both the Ashley incident and the Baldino incident occurred around 1997. Concerning place, both the charged Ashley incident and the Baldino incident occurred in a home, at night, in which young women had planned to spend the night and after members of the household had retired; a situation that afforded defendant access to and control over his victims. Concerning family relationship, both Ashley and Baldino were family friends of defendant: Ashley, through her parents' friendship with defendant; and Baldino, through her service in caring for defendant's children. Concerning the form of sexual act, defendant touched Ashley's and Baldino's breasts.[5]

---

5. The defendant points to other differences between Baldino's testimony and the charged incident, all of which we find unpersuasive. The defendant, for example, asserts that the fact Baldino testified to defendant's use of alcohol is a meaningful difference. Rather, the alcohol simply was a means by which the defendant was able to convince Baldino to spend the night at his house. The fact that defendant did not need to serve Ashley alcohol, because she had already agreed to spend the night, does not render the two incidents dissimilar for the purposes of Rule 404(b) of the Rhode Island Rules of Evidence.

The defendant's argument that there is a meaningful difference in the fact that Baldino did not testify that defendant attempted to touch her vagina, when Ashley did testify to such an attempt, stretches the bounds of credulity. The actual sexual contact need not be

Finally, though there is a meaningful difference between the age of Ashley and Baldino, their relative age, compared with defendant's age, does suggest a predilection for much younger females who may be both less resistant to his unwelcome advances and less likely to report the incidents to authorities. Furthermore, the age difference is less relevant when considering that defendant supplied alcohol to Baldino, who was under the legal drinking age.

In *Hopkins*, 698 A.2d at 185, we held that the defendant's prior sexual misconduct was admissible under the Rule 404(b) common scheme or plan exception to show that when given the opportunity, Hopkins had a plan to abuse children "in a like manner to that in which he abused his stepson when they were under his control or influence." Analogously, this defendant, seizing the opportunity presented by younger women spending the night in his presence, executed a common scheme or plan to assault two family friends in a like manner. Thus, we hold the trial justice acted within his discretion in allowing Baldino's testimony to be admitted into evidence under the common plan exception to Rule 404(b).

Admissibility under Rule 404(b), however, does not end the inquiry. The evidence must be relevant to prove the crime charged. *Jalette*, 119 R.I. at 627, 382 A.2d at 533. To be found guilty of second-

degree child molestation, defendant's contact with the victim must be committed with the purpose of "sexual arousal, gratification, or assault." Section 11-37-1(7); *see also State v. Tobin*, 602 A.2d 528, 535 (R.I.1992). The fact that similar incidents occurred with different women tends to prove defendant's intent to touch Ashley for the purpose of sexual gratification. Thus, Baldino's testimony is relevant to prove the crime charged.[6]

The offered evidence also may be admitted only when "reasonably necessary." *Jalette*, 119 R.I. at 627, 382 A.2d at 533. The defendant attacked Ashley's credibility on cross-examination in an effort to convince the jury that the state had not proven its case beyond a reasonable doubt. When charges of sexual abuse hinge upon a credibility contest between defendant and child complainant, relevant evidence of prior sexual misconduct is reasonably necessary to support the complainant's testimony. *Hopkins*, 698 A.2d at 187. Thus, in light of defendant's attack on Ashley's credibility, Baldino's testimony was reasonably necessary.

Finally, the trial justice instructed the jury in considerable detail, both after Baldino's testimony and again in his final instructions, that the testimony could be used only for the limited purposes provided by Rule 404(b), and not for the general purpose of showing defendant's propensity to commit criminal acts.[7] In light of the

---

identical to be considered sufficiently similar to be admitted into evidence.

**6.** The fact that the testimony was relevant for other purposes was the primary distinction between *Hopkins* and *Quattrocchi*. *State v. Hopkins*, 698 A.2d 183, 186 n. 3 (R.I.1997). Since the prior sexual misconduct to which Baldino testified clearly was relevant to the element of sexual gratification required in second-degree sexual assault, this case is distinguishable from the first-degree sexual assault charge in *Quattrocchi*, 681 A.2d at 879,

which held evidence of prior sexual misconduct to be inadmissible.

**7.** For example, the trial justice said in his final instructions to the jury:

"You have heard evidence in this trial from Kim Baldino that on another occasion the defendant allegedly was involved in other misconduct. Bear in mind that the only charge or offense before you is the offense with which this defendant is charged in this case involving [Ashley]. You may not draw any inference that this defendant commit-

preceding analysis and the trial justice's clear instructions, we discern no abuse of discretion by the introduction of evidence of defendant's prior sexual misconduct involving Baldino.

**B**

**Uncharged Prior Sexual Misconduct Involving Complainant**

■ The next question presented is whether the trial justice committed reversible error by failing to give a limiting instruction to the jury concerning uncharged sexual acts involving the complainant. Regardless of whether a defendant raises the issue at trial, the trial justice "has a sua sponte obligation 'to offer a limiting instruction when admitting evidence of other [uncharged] sexual acts.'" *State v. Lamphere,* 658 A.2d 900, 904 (R.I.1995) (quoting *State v. Toole,* 640 A.2d 965, 971 (R.I.1994)). When a defendant objects to the introduction of the evidence, the trial justice's failure to instruct constitutes reversible error. *Id.* at 906. When a defendant fails to object to the introduction of the evidence, however,

the trial justice's failure to instruct constitutes reversible error only if a defendant does not attempt to utilize the uncharged incidents to his or her advantage. *Toole,* 640 A.2d at 971.

■ Other than the charged incident, Ashley testified to two other incidents in which defendant touched and kissed her inappropriately: the hide-and-seek incident and the playroom incident. The trial justice failed to give a limiting instruction about either of these uncharged incidents. The defendant remained mute. Thus, this issue hinges on whether defendant utilized both incidents, either during cross-examination or in closing argument, to discredit Ashley's testimony. An examination of the trial transcript clearly shows that defendant repeatedly utilized both incidents. When cross-examining Ashley, for example, counsel for defendant inquired as to why Ashley told her friends about both the hide-and-seek and playroom incident, but not the sleepover incident. During defendant's closing argument, counsel for defendant argued that Ashley was not a credible witness because she may have been wrong about the specifics of the birthday party

ted, or is guilty of, the criminal offense with which he is charged, and for which he stands trial here before you because simply on a prior occasion he allegedly acted improperly. This is because the law says that the state cannot utilize this so-called other bad act or misconduct evidence to prove the character of a person in order to show that the person acted in conformity therewith. However, the state may introduce such evidence, and was allowed in this case to introduce such evidence, for other more limited purposes. To the extent that you decide to consider this evidence as evidence at all, it has been admitted for your consideration for the limited purpose of deciding whether the defendant acted for the purpose of sexual gratification; whether the defendant acted intentionally and not by mistake or accident; and whether the facts and circumstances of the other alleged misconduct and the offense with which the

defendant is charged in this case are so similar that it is likely that the defendant committed both the other alleged misconduct and the offense with which he is charged in this case, so-called evidence of a modus operandi, or plan or scheme, which I think has been referred to as MO, modus operandi, you may not consider this evidence for any other purpose. I specifically charge you that you may not use this evidence as proof that the defendant is a bad person, and therefore probably committed the crime with which he is charged in this information. You may use it only for the limited purpose of determining if the defendant, as I've just previously instructed you, acted intentionally and for the purpose of sexual gratification in committing the offense with which he is charged or as evidence of a *common plan, or scheme or modus operandi.*"

during the playroom incident and that the hide-and-seek incident occurred while others were trying to find them. Since defendant first failed to make a timely objection and then proceeded to use the prior uncharged incidents to discredit the complaining witness, we hold that the trial justice's failure to give the limiting instruction did not constitute reversible error. *See Toole*, 640 A.2d at 971–72. The better practice, however, is for the trial justice to give a *sua sponte* instruction or, at least, to inquire whether defendant's failure to object is an aspect of his or her trial strategy.

## C

### Verdict Form

■ Finally, we briefly address defendant's argument that use of the criminal information as the verdict form violated his constitutional rights. Our well settled raise-or-waive rule prevents us from addressing arguments not raised before the trial justice. *See State v. Hazard*, 785 A.2d 1111, 1116 (R.I.2001). The defendant's counsel failed to object and, in fact, approved the use of the criminal information as the verdict form by saying: "I don't see anything wrong with it the way it is." Despite this clear acquiescence, defendant argues that the raise-or-waive rule does not apply because no rule of law existed at the time of trial on the particular issue and, thus, this issue was a "novel" one.

■ This is not the law. The mere fact that an issue has not yet been challenged in this jurisdiction "does not render these questions 'novel' for the purposes of the raise-or-waive rule." *Cronan ex rel. State v. Cronan*, 774 A.2d 866, 878 (R.I. 2001) (setting out the three-part test governing the exception to the raise-or-waive rule). A novel issue must be a rule of law

that " 'counsel could not reasonably have known during the trial.' " *Id.* The defendant clearly was aware during the trial of both his constitutional right to a fair trial and the use of the criminal information as the verdict form. Thus, the defendant's argument that the raise-or-waive rule does not apply is without merit.

### Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.

ROBINSON, Justice, concurring in part and dissenting in part.

I am fully persuaded of the correctness of the majority's holdings concerning (1) the admissibility in this case of the evidence of the defendant's uncharged purported prior sexual misconduct vis-à-vis the complainant herself and (2) the verdict form issue. I therefore join without reservations in those holdings and in the underlying legal analysis. With respect to the testimony of Kim Baldino, however, I feel compelled to dissent—although I readily acknowledge the thoughtful nature of the majority's approach to the vexing evidentiary issue which that testimony implicates.

In my view, the trial court committed reversible error when it denied defendant's in limine motion, which sought to exclude evidence concerning the 1996 incident in Connecticut that involved the defendant and a woman named Kim Baldino (who eventually testified at the Superior Court trial of this case that defendant had engaged in a nonconsensual sexual touching of her breast while she was a guest in his home in Connecticut). Even allowing for the abuse of discretion standard by which trial court decisions under Rule 404(b) of the Rhode Island Rules of Evidence are to

be analyzed,[8] I do not believe that Ms. Baldino's testimony regarding the Connecticut incident was properly admitted.[9]

## I

### Preliminary Considerations

Almost fifty years ago, an article in the Iowa Law Review began with the following memorable words:

> "Strongly entrenched among many American traditions is the concept that man should not be judged strenuously by reference to the awesome spectre of his past life. When one faces trial for a specific crime, he should not be held to answer for the scandal that his earlier vices would most certainly produce. * * * Evidence of other crimes and misdeeds is not excluded because of an inherent lack of probative value, but is withheld as a precaution against inciting prejudice. Adherents to the common law have for centuries boasted of a certain Anglo–American solicitude for the prisoner, contrasting their accusatorial methods with the inquisitorial devices of continental jurists." M.C. Slough & J.

William Knightly, Other Vices, Other Crimes, 41 Iowa L. Rev. 325, 325 (1956).

It is that venerable concept of the law's "solicitude" for the accused, to which the above-quoted passage from a law review article makes reference, that lies at the root of Rule 404(b) of our Rules of Evidence (and analogous rules in so many other jurisdictions). The purpose of these rules (derived from the common law rules of evidence) is to exclude evidence of a defendant's alleged *propensity* to commit crime; our system seeks to focus the attention of the finders of fact on the evidence pertinent to the particular crime of which the defendant is presently charged.[10]

Rule 404(b) essentially codifies the longstanding rule that evidence of a criminal defendant's *propensity* to commit crime is inadmissible in the prosecution of a particular criminal case. *See, e.g., State v. Stewart*, 663 A.2d 912, 923 (R.I.1995) ("[E]vidence of prior crimes is not admissible to prove the propensity of a defendant to commit such a crime * * *."); *State v. Brigham*, 638 A.2d 1043, 1044 (R.I.1994) ("As a general rule, in the prosecution of a specific crime, evidence of past, unconnect-

---

**8.** *See, e.g., State v. Breen*, 767 A.2d 50, 58 (R.I.2001).

**9.** To understand the principal evidentiary concern that is addressed in this dissent, it is important that the reader bear in mind from the outset that the complainant in the case at bar was thirteen years old at the time when she was allegedly molested by defendant, whereas Ms. Baldino was in her late teens when the incident in Connecticut involving defendant and her took place. (The record is not entirely clear as to whether Ms. Baldino was eighteen or nineteen at the time of the incident in Connecticut.)

**10.** In *People v. Lehman*, 5 Ill.2d 337, 125 N.E.2d 506 (1955), the Supreme Court of Illinois explained with laudable terseness why propensity evidence is so potentially dangerous: "Evidence of other crimes is objectiona-

ble 'not because it has no appreciable probative value, but because it has too much.' * * * The law distrusts the inference that because a man has committed other crimes he is more likely to have committed the current crime." *Id.* at 509 (quoting 1 John H. Wigmore, Evidence § 194 (3d ed. 1940)).

Similarly, the Supreme Court of New Hampshire has tellingly pointed to the immensely prejudicial effect of propensity evidence:

> "Prejudice results when the testimony of a witness conveys to a jury the fact of a defendant's prior criminal offense. * * * The infusion of such evidence into a trial is 'probably only equalled by a confession in its prejudicial impact upon a jury.' " *State v. Woodbury*, 124 N.H. 218, 469 A.2d 1302, 1305 (1983) (quoting *Commonwealth v. Spruill*, 480 Pa. 601, 391 A.2d 1048, 1049–50 (1978)).

ed, uncharged criminal behavior is not admissible to prove a defendant's propensity to commit the crime charged. * * * The basis for excluding such evidence of 'other crimes' is the belief that 'the potential for creating prejudice in the minds of the jurors outweighs its probative value.' ") (quoting *State v. Brown*, 626 A.2d 228, 233 (R.I.1993)); *see also United States v. McCourt*, 925 F.2d 1229, 1235–36 (9th Cir. 1991) (discussing the federal analogue of our Rule 404(b) and stating that this rule of evidence "reflects a deep seated notion that our system of justice should not permit the trier of fact to infer that because someone was a bad guy once, he is likely to be a bad guy again."); *State v. Quattrocchi*, 681 A.2d 879, 885–86 (R.I.1996); *State v. Lemon*, 497 A.2d 713, 721 (R.I. 1985); *see generally State v. Trempe*, 140 N.H. 95, 663 A.2d 620 (1995); *State v. Winter*, 162 Vt. 388, 648 A.2d 624 (1994); *State v. Jalette*, 119 R.I. 614, 382 A.2d 526 (1978).[11]

Moreover, it should be remembered that Rule 404(b) springs from one of the basic assumptions of our criminal justice system—namely, that a defendant should be tried only for the crime(s) with which said defendant presently stands accused. This principle that a criminal trial should focus on the presently charged crime and not on past criminal or wrongful conduct was es-

pecially well articulated in *United States v. Hodges*, 770 F.2d 1475, 1479 (9th Cir.1985):

"Our reluctance to sanction the use of evidence of other crimes stems from the underlying premise of our criminal justice system, that the defendant must be tried for what he did, not for who he is. Under our system, an individual may be convicted only for the offense of which he is charged and not for other unrelated criminal acts which he may have committed. Therefore, the guilt or innocence of the accused must be established by evidence relevant to the particular offense being tried, not by showing that the defendant has engaged in other acts of wrongdoing."

This Court has expressed its adherence to that fundamental principle on various occasions. In *State v. Gomes*, 690 A.2d 310, 316 (R.I.1997), this Court expressed in particularly emphatic language its awareness of just how prejudicial such evidence can be, stating: "Evidence of other crimes or bad acts is usually considered so prejudicial that it is per se inadmissible regardless of any relevancy that it might have to show the propensity of a defendant to have committed the charged crime." *See also Stewart*, 663 A.2d at 922 ("Generally, evidence that shows or tends to indicate that an accused has committed another crime independent of the crime for which he or she is standing trial is irrelevant and inad-

---

11. Numerous other courts have similarly emphasized that fundamental principle. *See, e.g., Michelson v. United States*, 335 U.S. 469, 475, 69 S.Ct. 213, 93 L.Ed. 168 (1948) (Jackson, J.) ("Courts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt. * * * The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge.");

*United States v. Frankhauser*, 80 F.3d 641, 648 (1st Cir.1996) ("Although logically relevant, 'propensity' or 'bad character' evidence carries an unacceptable risk that a jury will convict for crimes other than those charged, or that it will convict, although uncertain of guilt, because a bad person deserves punishment."); *People v. Zackowitz*, 254 N.Y. 192, 172 N.E. 466, 468 (1930) (Cardozo, C.J.) ("In a very real sense a defendant starts his life afresh when he stands before a jury, a prisoner at the bar."); *see also United States v. Foskey*, 636 F.2d 517, 523 (D.C.Cir.1980); *United States v. Myers*, 550 F.2d 1036, 1044 (5th Cir.1977).

missible."); *State v. Gallagher*, 654 A.2d 1206, 1210 (R.I.1995) ("As a general rule, evidence that shows or tends to indicate that the accused has participated in a crime for which he or she is not on trial, even if it is the same type of crime, is irrelevant and inadmissible.").

In a manner that is consistent with the previously cited decisions from other jurisdictions, this Court has explicitly cautioned about the danger that a jury might make decisions based upon the defendant's perceived propensity rather than upon the evidence relative to the crime for which the defendant is on trial. *See, e.g., Gallagher*, 654 A.2d at 1210 ("When a jury is allowed to consider independent crimes for which a defendant is not on trial, a real possibility exists that such indication of bad character or bad acts would create prejudice in the minds of the jurors and improperly influence their decision in regard to the crimes charged. * * * The danger is that jurors may believe that the prior crimes or bad acts denote a propensity in a defendant to commit the crime with which he or she is charged. In these circumstances the potential for prejudice outweighs the probative value of such evidence, and it is therefore inadmissible."); *see also State v. Pratt*, 641 A.2d 732, 742 (R.I.1994).

In *Gallagher*, 654 A.2d at 1211, this Court characterized the evidence of unrelated, prior crimes as being "irrelevant and *inherently prejudicial.*" (Emphasis added.) The "inherently prejudicial" nature

of such evidence should, in my judgment, lead to a rule that, where there is some meaningful doubt as to its admissibility, evidence of this sort should be excluded. In my view, the "close calls" should be resolved in favor of the party seeking to exclude evidence of prior crime or wrongdoing. *See State v. Smith*, 106 Wash.2d 772, 725 P.2d 951, 953 (1986).

It should also be borne in mind that Rule 404(b) is a rule of exclusion.[12] The rule makes it clear that otherwise relevant evidence is to be excluded (*i.e.*, not admitted) unless certain specified exceptional conditions are fulfilled. In other words, unless a specific exception to Rule 404(b) is properly invoked, evidence of prior wrongs with its implications of propensity (which can be so powerful) should be quite simply off-limits. *See Quattrocchi*, 681 A.2d at 886 (noting this Court's expressed reservations about extending the other-crimes (or bad-acts) exception and commenting on that exception's "overwhelming prejudice to defendant and its tendency to be viewed by the trier of fact as evidence that defendant is a bad man, and that he has a propensity toward sexual offenses and, therefore, probably committed the offense with which he is charged.").

Bearing in mind the just-summarized principles, it is my view that the testimony of Kim Baldino about defendant's misconduct towards her served no legitimate purpose in the prosecution of this case other than "to demonstrate the accused's propensity to commit the crime charged."

12. This Court has frequently referred to Rule 404(b) of the Rhode Island Rules of Evidence as being a rule of exclusion. *See, e.g., State v. Garcia*, 743 A.2d 1038, 1050 (R.I.2000) (referring to "the general exclusionary rule of Rule 404(b)"); *see State v. Gallagher*, 654 A.2d 1206, 1210 (R.I.1995) (discussing the exceptions "to this exclusionary rule"); see also *State v. Chartier*, 619 A.2d 1119, 1123 (R.I. 1993); *State v. Lemon*, 497 A.2d 713, 721 (R.I.1985); *State v. Jalette*, 119 R.I. 614, 623–28, 382 A.2d 526, 531–33 (1978); *see generally Spencer v. Texas*, 385 U.S. 554, 560, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967) (stating that evidence of prior offenses is "generally recognized to have potentiality for prejudice" and noting that it is usually excluded except where a specific recognized exception applies).

*Jalette*, 119 R.I. at 625, 382 A.2d at 532. When all is said and done, the evidence of defendant's criminal conduct vis-à-vis Ms. Baldino in Connecticut was evidence of the defendant's *propensity;* and I do not believe that it fell within any recognized exception to Rule 404(b)'s fundamental exclusionary provision. As such, the Baldino testimony should have been deemed inadmissible.[13]

In my view, the Connecticut and Rhode Island incidents were too fundamentally dissimilar even to merit consideration under any arguably pertinent exception to Rule 404(b).[14] Moreover, even if that obstacle were surmounted, no recognized exception to Rule 404(b) would properly apply. I shall explain my point of view in Sections "II" and "III" of this opinion.

## II

### The Two Incidents Were Insufficiently Similar

I fail to see a sufficient *similarity* (as that term is employed in Rule 404(b) jurisprudence) between the Connecticut incident and the crime with which defendant was charged in Rhode Island. To my mind, this is a consideration of capital importance.

It is important to remember that a precondition for evidence even being considered for admissibility under any exception to Rule 404(b) that might be applicable in this case is that there be similarity between the prior incident and the factual context of the case at bar.[15] Absent meaningful similarity, the evidence of the other crime is *irrelevant. See, e.g., United States v. Rubio,* 834 F.2d 442, 451 (5th Cir.1987) ("Relevance is a function of the similarity of the extrinsic offense to the offense charged."); *State v. DeVincentis,* 150 Wash.2d 11, 74 P.3d 119, 125 (2003) ("[A]dmission of evidence of a common scheme or plan requires substantial similarity between the prior bad acts and the charged crime."); *see also United States v. Thomas,* 964 F.2d 836, 839 (8th Cir.1992) (stating that, for evidence of another crime possibly to be admissible under an exception to Rule 404(b), it must first "be similar in kind * * * to the crime charged.").[16]

**13.** In *United States v. Cortijo–Diaz,* 875 F.2d 13, 15 (1st. Cir.1989), the First Circuit emphasized the core values that are protected by Rule 404(b):

"Although it seems unnecessary to restate the rule's plain language, experience shows that we cannot over-emphasize the central principle for which this rule stands, which is a negative one: evidence of other acts is *not admissible* to prove propensity to engage in criminal activity. * * * The rule is, of course, simply a legislative enactment of long-established notions of fair play and due process, which forbid judging a person on the basis of innuendos arising from conduct which is irrelevant to the charges for which he or she is presently standing trial, *i.e.,* against finding present guilt based on a 'bad character profile.' The general rule is thus *against* admissibility of 'other act' evidence."

**14.** The principal exceptions to Rule 404(b)'s prohibitory language are itemized in the text

of the Rule, which indicates that evidence of other crimes, wrongs, or acts may be admissible for certain purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that defendant feared imminent bodily harm and that the fear was reasonable."

**15.** There are situations under Rule 404(b) in which similarity between two events would not be required for an exception to the Rule properly to be invoked. *See, e.g., State v. Stewart,* 663 A.2d 912, 923 (R.I.1995). But the case at bar is not of that type: the prosecution sought to admit the Baldino evidence precisely *because of* its perceived similarity to the charged offense.

**16.** It is noteworthy that, in *Jalette,* in which this Court broadened to some extent the range of exceptions to Rule 404(b)'s prohibitory language, the Court specifically re-

Unless there is a real *similarity* between the two acts, the process of analyzing whether there might be an applicable exception to the exclusionary effect of Rule 404(b) should stop immediately. *See generally United States v. Frankhauser*, 80 F.3d 641, 648 (1st Cir.1996); *United States v. Huff*, 959 F.2d 731, 736 (8th Cir.1992); *United States v. Fields*, 871 F.2d 188, 197 (1st Cir.1989).[17]

The dissimilarity in age between the complainant and Ms. Baldino is striking. The dissimilarity that troubles me does not stem from the raw *numerical* difference in age between the two persons, but rather from the fact that, at the pertinent time, Ms. Baldino was a young adult, while, in contrast, the complainant in this case was, in law and in actuality, a *child*.[18] In my view, it is extremely significant that the complainant in the case at bar was thirteen years old at the time of the alleged molestation that was the subject of the instant criminal prosecution, whereas the woman involved in the prior incident in Connecticut was in her late teens at the time of the sexual assault upon her.[19]

To my mind, that dissimilarity is dispositive of the Rule 404(b) issue in this case. *See Clingan v. State*, 317 So.2d 863, 863 (Fla.Dist.Ct.App.1975) (reversing a conviction in which the alleged victim was a twelve-year-old male and the trial court had admitted evidence of an earlier homosexual encounter between defendant and another adult male; the appellate court stated that "[t]he testimony of the collateral act merely showed the bad character of the defendant and his propensity to commit a homosexual act"). I believe that allowing the jury to hear about the Connecticut incident was fundamentally unfair given the age differences involved. *See United States v. Cortijo–Diaz*, 875 F.2d 13, 15 (1st. Cir.1989) (stating that Rule 404(b) of the Federal Rules of Evidence is "simply a legislative enactment of long-established notions of fair play and due process").

marked that it was extending "a greater latitude of proof as to *like occurrences* when considering sexual offenses than has been permitted in the trial of other criminal charges." *Jalette*, 119 R.I. at 626, 382 A.2d at 532. (Emphasis added.)

It is further noteworthy that even the majority in this Court's 3–2 decision in *State v. Pignolet*, 465 A.2d 176, 181 (R.I.1983), which expanded to some extent the rule in Jalette, mentioned as one of the elements upon which it relied the fact that the victim of the uncharged conduct was *"so closely related in * * * age"* to the age of the complainant in the case before the court. (Emphases added.)

17. I do not deny the existence of *some* similarities between the allegations stemming from the Connecticut and Rhode Island incidents, but the law requires more than *some* similarities. *See generally State v. Hansen*, 187 Mont. 91, 608 P.2d 1083, 1085–86 (1980) (discussing what is required in terms of similarities between the incidents being compared). From my perspective, the dissimilarity in age (the relative extent of maturation) between the persons involved in the two incidents at issue in this case completely overwhelms whatever similarities there otherwise may be between the two situations.

18. See note 2, *supra*.

19. *Cf. State v. Hopkins*, 698 A.2d 183, 184 (R.I.1997) (allowing evidence, in the prosecution of sexual molestation of defendant's stepson, of defendant's alleged sexual abuse of "two other children when they were about the same age as the stepson"); *State v. Brooks*, 260 Mont. 79, 857 P.2d 734, 735 (1993) ("[The defendant's] actions show a systematic plan to entertain boys or adolescents in a recreational setting in which they feel comfortable and then, immediately or soon after, to catch them off-guard and unexpectedly sexually assault them."). The sexual assault that was the subject of the criminal trial in *Brooks* involved an eleven-year-old boy, whereas the prior crime that the trial court admitted into evidence had involved a thirteen-year-old boy. *Brooks*, 857 P.2d at 734–35.

Venerable traditions in our law treat sexual batteries upon children with special seriousness. There is, however, far too little similarity between the defendant's conduct in Connecticut (which involved a person over the age of consent) and his alleged conduct in Rhode Island (where the alleged victim was a child). In my view, the fact that defendant was once involved in a sexual battery (*viz.*, a non-consensual touching of the breast of a non-minor female guest in his home) should not have been admitted as evidence that defendant committed the charged crime (sexual battery upon a minor). While no one who respects the integrity of other human beings would condone for a moment defendant's sexual misconduct in the Connecticut situation, the plain fact is that it involved the improper touching of a female over the age of consent. As improper as that act unquestionably was, it differs in kind from molestation of a child.

The majority opinion expressly acknowledges that there was a "meaningful difference between the age of Ashley and [Kim] Baldino," but the majority opinion then seeks to minimize that difference in age by stating that "similar age is but one of the factors to be analyzed when comparing the charged incident with the prior sexual misconduct." The majority opinion further goes on to state that "their relative age, as compared with defendant's age, does suggest a predilection for much younger women * * *."[20] In my judgment, however, the relatively small number of years that separates Ms. Baldino's age (age eighteen or nineteen at the relevant time) from that of the alleged victim in this case (age thirteen at the relevant time) pales in comparison to the fact that the alleged victim in this case was, in the eyes of the law and in the eyes of our society generally, *a child*, whereas Ms. Baldino was a young adult.

It seems to this writer that the concept of "taboo" is relevant to the Rule 404(b) analysis in this case.[21] The observation in the majority opinion about defendant's possible "predilection for much younger women" overlooks entirely the effect of social taboos (not to mention the minatory role of child sexual abuse laws) upon those who may possibly have such a predilection and who might be tempted to act out against young teenagers. As a matter of logic and on the basis of my own observation of societal mores, it simply does not follow that a person who might opt to commit a sexual battery (an unpermitted touching) on a person who has reached the age of consent (even a person who is still relatively young but who is nonetheless no longer classified as a minor) would, on the basis of that character flaw, be willing to do anything remotely similar vis-à-vis a child. Such a person's reticence about acting criminally towards a child might spring from a residual moral sense, an awareness of society's deep detestation of crimes against children, or from the effect of secular taboos; but, for whatever reason, different or additional considerations surely enter the picture when possible criminal sexual assault upon a child is contemplated than when a person contemplates assaulting a young adult in a sexual manner. Although both deeds are reprehensible and criminal, they are to my mind far too

---

**20.** I would also observe that the "predilection" phraseology in the quoted passage from the majority opinion comes perilously close to being the language of propensity. *See State v. Trempe*, 140 N.H. 95, 663 A.2d 620, 622 (1995) ("[E]vidence of prior wrongs is inadmissible to prove a disposition to commit such acts.").

**21.** I use the word "taboo" here in its colloquial sense and not in the technical sense in which cultural anthropologists use the term.

dissimilar for an exception to Rule 404(b) properly to be invoked.

While I certainly do not condone or in any way make light of *any* sexual battery against another person, I believe that an appellate court may properly take notice of the sociological reality that many men who might take unconsented liberties with a young woman in her late teens would decline to do so with an adolescent who had not attained the age of consent.[22]

I perceive a real analogy between this case and *State v. Cardoza*, 465 A.2d 200 (R.I.1983). In *Cardoza*, this Court found reversible error in the trial court's admission of evidence of defendant's sexual assault on his grandmother in a trial where the prosecution was "attempting to establish a behavioral pattern of a man who sexually abuses his stepchildren." *Id.* at 204. In my judgment, the same reasoning (the lack of sufficient similarity between the two events) should have barred the admission of the Baldino testimony in this case.

## III

## In Any Event, No Rule 404(b) Exception Would Be Applicable

The majority holds that "the trial justice acted within his discretion in allowing Baldino's testimony to be admitted into evidence under the common plan exception to Rule 404(b)." I vigorously disagree.

Even if there were sufficient similarity between the incident in Connecticut and what was alleged to have happened in this case to merit a consideration of Rule 404(b) exceptions (and I emphatically repeat that I fail to see such similarity), I do not believe that the evidence as to the Connecticut incident would be admissible pursuant to the "common plan" exception to Rule 404(b)'s exclusionary bar.[23]

**22.** A court is permitted to take judicial notice of societal realities of this sort. *See, e.g., Opinion to the Governor*, 75 R.I. 54, 63, 63 A.2d 724, 729 (1949) ("[W]e can and do take judicial notice of the fact that when the act was passed the existence of an acute, widespread and distressing shortage in housing accommodations endangering the health, safety or morals of the public generally was a matter of common knowledge."); *see also Flynn v. Hubbard*, 782 F.2d 1084, 1087 n. 1 (1st Cir.1986); *Fischer v. McGowan*, 585 F.Supp. 978, 985 (D.R.I.1984); *Hospital Service Corp. of Rhode Island v. Pennsylvania Insurance Co.*, 101 R.I. 708, 715, 227 A.2d 105, 110 (1967).

Indeed, the United States Supreme Court has gone so far as to take judicial notice of the fact that "with or without access to contraceptives, the incidence of sexual activity among minors is high, and the consequences of such activity are frequently devastating * * *." *Carey v. Population Services International*, 431 U.S. 678, 696, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977) (plurality opinion of Brennan, J.).

**23.** It appears to me that the burden of establishing the applicability of a particular ex-

ception to Rule 404(b)'s general prohibitory language should quite clearly be on the prosecution. My view in that regard is based upon the fact that the plain language of Rule 404(b) excludes prior wrong evidence *unless* a particular exception is properly invoked. I infer from the exclusionary wording of Rule 404(b) that the proponent bears the burden of establishing that a particular exception applies.

While I am not aware of any reported Rhode Island case that specifically so states, the following statement by the Supreme Court of Vermont in *State v. Winter*, 162 Vt. 388, 648 A.2d 624 (1994), sets forth the principle which I believe to be correct:

"We must also emphasize that the grounds for admission specified in Rule 404(b) are not *magic words*, the utterance of which automatically admits all uncharged misconduct evidence. The State has the burden to show precisely how the proffered evidence is relevant to the theory advanced, how the issue to which it is addressed is related to the disputed elements in the case, and how the probative value of the evidence is not substantially outweighed

I agree that a "common design or plan" is a concept that is broader than a single plot, or series of events. *See, e.g., People v. Ewoldt,* 7 Cal.4th 380, 27 Cal.Rptr.2d 646, 867 P.2d 757, 769 (1994). While I of course acknowledge that there are situations where the common plan exception may properly be invoked,[24] "[a] greater degree of similarity is required in order to prove the existence of a common design or plan." *Id.* at 770. That exception requires far more similarity between the incidents and far more indicia of a systematic plan than are present here. *See, e.g., State v. Lough,* 125 Wash.2d 847, 889 P.2d 487, 490 (1995) ("We conclude that a common plan or scheme may be established by evidence that the Defendant committed markedly similar acts of misconduct against similar victims under similar circumstances.").

Therefore, I would hold that, to be admissible pursuant to the "common plan" exception, the prosecution needed to demonstrate that Ms. Baldino's testimony was relevant to prove that defendant had a *systematic scheme* to take criminal sexual advantage of female children. The case of

*Cardoza,* 465 A.2d at 203 helps illustrate our requirement that the challenged evidence must demonstrate the indicia of a systematic scheme. In that case, we upheld the admission of evidence of abuse of a different stepdaughter as "part of defendant's continuing behavioral pattern of sexually abusing his stepdaughters within the same time period." *Id.*

After much reflection, I fail to see how the evidence concerning defendant's criminal wrongdoing in Connecticut establishes that there was a systematic plan of which the charged crime in Rhode Island was a part.[25] I simply do not believe that the Connecticut evidence is relevant to proving that defendant had a systematic scheme to take criminal sexual advantage of female children. I might well reach a different conclusion if the Connecticut incident had involved a child—but it did not.

The Baldino evidence may have helped to persuade the jury of defendant's propensity to engage in sexual misconduct, but that is precisely what the law does not countenance. As one court has stated:

---

by its prejudicial effect." *Winter,* 648 A.2d at 627.

The Supreme Court of New Hampshire spoke similarly in *State v. Kirsch,* 139 N.H. 647, 662 A.2d 937 (1995):

"The burden is on the State to articulate to the trial judge the precise evidentiary purpose for which it seeks to introduce the other crimes evidence and the purported connection between the evidence and the stated purpose." *Id.* at 942; *see also United States v. Hogue,* 827 F.2d 660, 662 (10th Cir.1987).

**24.** *See, e.g., United States v. Huff,* 959 F.2d 731, 736–37 (8th Cir.1992); *United States v. Norton,* 846 F.2d 521, 524 (8th Cir.1988); *State v. Lough,* 125 Wash.2d 847, 889 P.2d 487, 490 (1995).

**25.** *Cf. Brooks,* 857 P.2d at 735 ("[The defendant's] actions show a systematic plan to en-

tertain boys or adolescents in a recreational setting in which they feel comfortable and then, immediately or soon after, to catch them off-guard and unexpectedly sexually assault them."); *Hopkins,* 698 A.2d at 184 (finding the existence of a systematic plan where the prosecution offered "evidence that Hopkins had allegedly sexually abused two other children when they were about the same age as the stepson"); *State v. Bennett,* 36 Wash.App. 176, 672 P.2d 772 (1983).

The dissent of then-Chief Justice Weisberger in the *Hopkins* case continues to be powerful. *Hopkins,* 698 A.2d at 189–91; *see also* Amber Donner–Froelich, Comment, *Other Crimes Evidence to Prove the Corpus Delicti of a Child Sexual Offense,* 40 U.Miami L.Rev. 217, 221 n. 32 (1985) (discussing the "plan or common scheme" exception and criticizing several cases that the author of the comment contends misapplied the plan or common scheme rationale).

"We perceive the true test for the admissibility of evidence of other offenses is whether it is relevant and necessary to prove an essential ingredient of the crime charged. * * * Nevertheless, when the relevancy is reached merely by demonstrating the accused's bad character through his propensity to commit similar crimes, evidence of the other offenses is ordinarily inadmissible. In this latter case, the peg of relevancy is said to be obscured by the dirty linen hung upon it." *State v. Irving,* 24 Wash. App. 370, 601 P.2d 954, 956–57 (1979).

In my view, the admission of the Baldino testimony was *not* harmless error—far from it! Even if the evidence concerning the Connecticut incident could survive the strictures of Rule 404(b), it would still be subject to review under Rule 403. *See, e.g., United States v. Temple,* 862 F.2d 821, 823 (10th Cir.1988) ("If the trial court finds that the prior acts are admissible under Rule 404(b), it must still conduct a separate balancing of the probative value of the evidence and its prejudicial effect under Rule 403.").[26]

Viewing the issue in the light of Rule 403 standards, it would be my view that the probative value of the evidence concerning the Connecticut incident was outweighed by its highly prejudicial nature. *See United States v. Moccia,* 681 F.2d 61, 63 (1st Cir.1982) ("The trial judge * * * must weigh the special relevance against the prejudicial risk, taking into account the likely hostile jury reaction that underlies the common law rule."); *see generally United States v. Varoudakis,* 233 F.3d 113, 121–25 (1st Cir.2000); *United States v. Myers,* 550 F.2d 1036, 1044–45 (5th Cir. 1977). The likely impact of such evidence which indicates to the jury that defendant at bar has previously committed a sexual offense is very great.[27] *See People v.*

---

**26.** In discussing the requirement that, before admitting evidence under an exception to Rule 404(b), the court must balance the probative value of the evidence against the danger of unfair prejudice, the Supreme Court of Washington has specifically indicated how the courts in that state should deal with doubtful cases in this area of the law of evidence. That court specifically ruled that "[i]n doubtful cases the scale should be tipped in favor of the defendant and exclusion of the evidence." *State v. Smith,* 106 Wash.2d 772, 725 P.2d 951, 953 (1986) (quoting *Bennett,* 672 P.2d at 776). I see wisdom in such an approach to "doubtful cases" involving Rule 404(b).

**27.** In view of my status as a dissenter in this case, it is not necessary for me to address at any length the majority's passing reference to what it considers to be the prosecution's need to prove the *purpose* for which the defendant allegedly touched the complainant in this case. Suffice it to say that I do not believe that the prosecution had to prove intent in *this* case. It must be remembered that defendant in the case at bar denied that the criminal conduct of which he was accused ever occurred.

To the extent that someone might suggest that proof of *modus operandi* would have been an adequate reason for admitting evidence of the Connecticut incident, that argument must fail because in this case there was no issue as to the identity of the accused, and so there was no relevant basis for the modus operandi evidence. *Modus operandi* evidence is sometimes admissible when there is a question as to identity, but not otherwise. *See, e.g., United States v. Wingart,* 27 M.J. 128, 135 (C.M.A. 1988) ("[E]vidence of an appellant's *modus operandi* might be admissible to help identify him as the perpetrator of a crime with which he is charged if there is some question about the identity of the person who committed the crime; and yet this evidence might be inadmissible if no issue existed as to identity but only as to whether a crime had been committed in the first place."); *see also United States v. Ferguson,* 28 M.J. 104, 109 (C.M.A.1989); *Velez v. State,* 762 P.2d 1297, 1301 (Alaska Ct.App.1988); *State v. Moeller,* 548 N.W.2d 465, 471–77 (S.D.1996); *see generally State v. Bowen,* 48 Wash.App. 187, 738 P.2d 316, 320–21 (1987) (discussing the difference between "common scheme or plan" and "modus operandi").

*Woltz*, 228 Ill.App.3d 670, 170 Ill.Dec. 502, 592 N.E.2d 1182, 1187 (1992) ("Erroneous admission of evidence of other crimes carries a high risk of prejudice and, ordinarily, calls for reversal.").

## Conclusion

I of course do not know whether or not defendant committed the foul deed with which he was charged. But, after reviewing the record and the case law, I am convinced that, because of the admission of Ms. Baldino's testimony, defendant did not receive a fair trial. I adopt as my own and would apply to this case what the Supreme Court of North Dakota said in its opinion in *State v. Osier*, 569 N.W.2d 441, 444 (N.D.1997):

> "There is no permissible basis under the circumstances of this case for admitting the niece's testimony under Rule 404(b) * * *. Her testimony was not relevant to a genuine issue regarding motive, scheme, plan, or any other listed exception under Rule 404(b) * * *. The sole purpose served by her testimony was to demonstrate [defendant's] criminal sexual character to show he probably acted in conformity with that character in committing the acts charged. * * * It is fundamentally unfair to tempt a jury

to convict a defendant circumstantially on the basis of prior misconduct or character propensity rather than upon evidence of 'the criminal acts charged. We conclude the trial court erred in admitting the niece's testimony."

I respectfully recall to mind this Court's cautionary and restrictive language in *Quattrocchi:*

> "We are of the opinion that *Pignolet* represented the extreme beyond which we are unwilling to extend the other-crimes (or bad-acts) exception because of its overwhelming prejudice to defendant and its tendency to be viewed by the trier of fact as evidence that defendant is a bad man, and that he has a propensity toward sexual offenses and, therefore, probably committed the offense with which he is charged." *Quattrocchi*, 681 A.2d at 886.[28]

Even after according due recognition to the fact that our modern jurisprudence has recognized the need for a certain liberalization of some traditional rules of evidence in trials involving allegations of sexual crimes (and most especially sexual crimes against children),[29] that liberalization must not become synonymous with standardlessness.[30] There comes a point where

---

Even if the term "modus operandi," were construed more broadly than the just-cited cases would allow, there is insufficient evidence here of "a distinctive pattern of criminal behavior." *People v. Woltz*, 228 Ill.App.3d 670, 170 Ill.Dec. 502, 592 N.E.2d 1182, 1186 (1992).

**28.** It will be recalled that the majority in *Quattrocchi*, did not abrogate this Court's earlier decision in *Jalette* and *Pignolet*, but it unequivocally declined to extend the "lewd disposition" exception (which those cases had recognized) beyond the context of "similar conduct with young children living in the same household * * *." *State v. Quattrocchi*, 681 A.2d 879, 886 (R.I.1996).

**29.** This Court has traveled many miles from the time of the highly circumspect decision in *Jalette*—a decision that is so full of cautionary language. *Jalette*, 119 R.I. at 627, 382 A.2d at 533.

**30.** I share the views expressed by Justice Katz of the Supreme Court of Connecticut in her dissenting opinion in the case of *State v. Kulmac*, 230 Conn. 43, 644 A.2d 887, 909 (1994) (Katz, J., dissenting):

> "Sexual assault is a terribly brutal and emotionally damaging crime, especially where the victims are minors. This does not, however, justify the adoption of special rules allowing the state to introduce any evidence of prior sexual misconduct that it can dig up against the defendant."

concerns of fundamental fairness and due process require that some evidence of prior wrongs must be excluded. *See Cortijo–Diaz,* 875 F.2d at 15 ("[Rule 404(b) is] simply a legislative enactment of long-established notions of fair play and due process * * *.").

In my view, the majority opinion cannot be reconciled with the essentially exclusionary effect of the language of Rule 404(b); and, after due reflection, I am unable to join in what I consider to be an unwarranted and unwise broadening of the contexts in which traditionally disfavored propensity evidence might be admitted.

For the reasons stated, and with genuine respect for my colleagues and for their thoughtful views concerning these difficult issues, I dissent.